Alonzo Rayna LOPEZ, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 01–85–01000–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 14, 1987.

David Mendoza, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Calvin A. Hartmann, Joann Lee, Harris County Asst. Dist. Attys., Houston, for appellee.

Before DUNN, WARREN and HOYT, JJ.

## OPINION

DUNN, Justice.

The jury convicted the appellant of involuntary manslaughter, and the court sentenced him to five years confinement.

Michael Rebstock testified that on October 18, 1984, at approximately 5:30 a.m., he was traveling east on highway 225 in Harris County, Texas. He described the highway as having clearly marked lines, an esplanade, and gravel shoulders. The weather was clear, and the pavement was dry.

As Rebstock was driving east, he saw a man waving at him from a ditch in the esplanade next to the left lane of the two eastbound lanes. Rebstock slowed down to see what the problem was, and then backed his Chevrolet Blazer up to where the man was standing. The left tires of Rebstock's vehicle were completely off the shoulder and located in the grass, while the right tires were three or four feet off the road. The headlights of the Blazer were on, as was the left turn signal. Rebstock testified that he had not had any problem seeing adequately enough to drive with his headlights on, that at the time he pulled over, it was almost daybreak, and that there was very little traffic on the road.

The man in the ditch, Tommy Pharr, walked up to Rebstock's window, and said that his car had been forced off the road by an 18-wheeler. As Rebstock was telling Pharr that he would try to push or pull him out, Pharr stepped backwards as if to give Rebstock room to get out of his truck. As he did so, Rebstock noticed that Pharr looked behind the truck. Before Rebstock could get out of the Blazer, there was a loud noise, and Rebstock was knocked unconscious for a few seconds. Rebstock testified that he did not hear a horn or any tire squeals before the impact of the vehicle into his Blazer.

When he awoke, Rebstock crawled out of his vehicle, which was over 40' down the road, and realized that he had been in a wreck. Rebstock walked back to the scene of the collision, and saw Pharr lying in the grass with his head on the gravel. Rebstock then went over to check on the appellant, whose car was stopped about 30' in front of Pharr's body. The car's lights were still on, and steam was coming out from under the hood. The appellant's left leg was hanging out of the driver's side of the car, and he was lying on the front seat. Rebstock testified that the appellant's car smelled "like a brewery." However, Rebstock stated that he did not smell any alcohol on the appellant's body or his breath, and he did not see any liquor or liquor bottles in the car.

Rebstock examined his car from the rear, and observed that the back left end was shoved up over the right tire. The right front half of the Blazer was badly damaged, with lesser damage to the left front of the vehicle.

Rick Hilton, a police officer for the city of LaPorte, was dispatched to the scene of the accident at 5:18 a.m. Hilton stated that Pharr was flown by Life Flight to a hospital where he later died. The appellant was taken away by ambulance. Hilton, who had received training on the investigation of accidents, testified that the markings on the shoulder indicated that Rebstock's vehicle had been parked off the road, and that there were no visible skid marks. It was Hilton's opinion that the appellant's vehicle left the highway completely to strike Rebstock's vehicle, and that it was the appellant's vehicle that struck Pharr. The stretch of road where the accident occurred was straight; the lanes were clearly marked, and there was nothing that would obstruct the view of a driver. Hilton testified that the cause of the accident was failure to maintain a single-marked lane, and failure to keep a proper lookout. However, the jury was instructed to dis-

regard Hilton's testimony concerning the failure to keep a proper lookout after defense counsel objected that this was not within Hilton's personal knowledge. Hilton also stated that he smelled a faint odor of alcohol that appeared to be coming from inside the appellant's vehicle. Hilton looked inside the vehicle, but did not find any alcohol.

Sherri DeLoach, a medical technologist for Baytown Humana Hospital, testified that she took a blood specimen from the appellant immediately following his arrival to the hospital, and that the blood-alcohol level measured .104 grams per 100 milliliters of blood.

■ In points of error one, two, three, and four, the appellant contends that the evidence was insufficient as to both reckless failure to keep a proper look-out and reckless failure to maintain a single-marked lane, and further, that the evidence that the appellant's vehicle collided with the decedent was insufficient. These arguments are without merit.

The relevant question when considering sufficiency of the evidence on appeal is whether, after viewing the evidence in light favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979); *Taylor v. State*, 684 S.W.2d 682, 684 (Tex.Crim.App.1984). The ultimate "standard of review" in a circumstantial evidence case is no different from the standard for direct evidence. *Christian v. State*, 686 S.W.2d 930, 934 (Tex.Crim.App. 1985).

The involuntary manslaughter statute states that a "person commits an offense if he ... recklessly causes the death of an individual...." Tex.Penal Code Ann. § 19.05(a)(1) (Vernon 1974). Rebstock testified that his car was stopped completely off of the road when the appellant struck it. He also testified that the weather was clear, and that the pavement was dry. Finally, immediately following the accident, Rebstock saw the appellant's wrecked vehicle 30′ from the point of collision. Hilton

testified that, in his opinion, the appellant's vehicle completely left the highway to strike Rebstock's car, and that it was the appellant's car that struck Pharr. Hilton also testified that the section of the road where the accident occurred was straight, and that there was nothing that would obstruct a driver's view. In Hilton's opinion, the cause of the accident was the appellant's failure to maintain a single marked lane. There is no other reasonable inference that could be drawn from such circumstances, other than the conclusion that Pharr's death was caused by the appellant's reckless failure to maintain his vehicle in a single marked lane.

Points of error one, two, three, and four are overruled.

In point of error five, the appellant argues that the trial court committed reversible error in allowing the prosecutor and the court, during voir dire, to give the jury panel the "per se" intoxication definition under Tex.Rev.Civ.Stat.Ann. art. 6701*l* –1(a)(2)(B) (Vernon Supp.1987), contrary to the requirements of the Tex.Penal Code Ann. § 19.05(b) (Vernon 1974), in violation of the Tex.Code Crim.Proc.Ann. art. 1.04 (Vernon 1977).

Texas Revised Civil Statutes article 6701*l* –1(a) states as follows:

(a) *In this article:*

(1) 'Alcohol concentration' means:

(A) the number of grams of alcohol per 100 milliliters of blood;

(B) the number of grams of alcohol per 210 liters of breath; or

(C) the number of grams of alcohol per 67 milliliters of urine.

(2) *'Intoxicated' means:*

(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more of those substances into the body; *or*

(B) *having an alcohol concentration of 0.10 or more.* (Emphasis added.)

Texas Penal Code section 19.05 states as follows:

(a) A person commits an offense if he:

(1) recklessly causes the death of an individual; or

(2) by accident or mistake when operating a motor vehicle while *intoxicated* and, by reason of such intoxication, causes the death of an individual.

(b) *For purposes of this section, 'intoxication' means that the actor does not have the normal use of his mental or physical faculties by reason of the voluntary introduction of any substance into his body.*

(c) An offense under this section is a felony of the third degree. (Emphasis added.)

Texas Code of Criminal Procedure article 1.04 states as follows:

No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

The appellant argues that the trial judge and the prosecutor erred in telling the jury during voir dire that a person is "deemed" intoxicated if his blood-alcohol concentration is .10 or greater. The appellant's argument is based on the following exchange that occurred during voir dire:

PROSECUTOR: *Yes, the other way to prove intoxication is to prove that this defendant or that person has lost—a person has a .10 alcohol concentration in his system.*

DEFENSE COUNSEL: *We object to this definition as not being a definition explained by law under Section 19.05 in the Texas Penal Code.*

PROSECUTOR: Your Honor—

THE COURT: *Overruled.*

PROSECUTOR:—the legislature found that based on studies and tests, everyone has lost the normal use of mental and physical faculties—

DEFENSE COUNSEL: Objection, Your Honor. That is a misstatement of the law as to what the legislature has found or not found. If she would restrict her remarks to a definition, if she is going to define intoxication well—

THE COURT: I will sustain the objection. Don't go into the history of the amount.

THE PROSECUTOR: Yes, Your Honor. In a case where evidence is presented to you that a person has a .10 alcohol concentration in his blood at the time that he was operating a motor vehicle, *could each of you find that this person by law was intoxicated?* Anybody on the first row that could not do that? It it's confusing I will restate it.

THE COURT: *She is saying that is what the law says. She is merely asking if the situation arises, could you follow the law that was presented to you?*

UNIDENTIFIED JUROR: Yes.

PROSECUTOR: All right. Thank you, Your Honor. What about you sir?

PROSECUTOR: No problem?

UNIDENTIFIED JUROR: No problem.

PROSECUTOR: All right. I'm just going to go by person so that I am be sure that each of you could understand.

UNIDENTIFIED JUROR: I don't remember what the question was.

PROSECUTOR: I figured that I would get lost somewhere. If evidence was presented to you that a person has had .1 at the time that he operated a motor vehicle, based on the law could you find that person was intoxicated?

UNIDENTIFIED JUROR: You would have to prove the man was intoxicated.

PROSECUTOR: Okay. *The law right now says if a person has .10 alcohol concentration in his blood, he is deemed intoxicated.*

UNIDENTIFIED JUROR: You would have to prove that he was intoxicated to me. How are you going to do that?

PROSECUTOR: Are you saying, sir, if it's proven to you that a person had that alcohol concentration of .10 in his blood, that would not satisfy you as far as he being intoxicated?

UNIDENTIFIED JUROR: No, it wouldn't.

PROSECUTOR: You are Mr. Garcia?

MR. GARCIA: Yes.

PROSECUTOR: All right. What about you, sir?

UNIDENTIFIED JUROR: *You would have to prove it to me.*

PROSECUTOR: All right. How about you?

UNIDENTIFIED JUROR: No problems?

PROSECUTOR: Mr. Southwick?

MR. SOUTHWICK: No problems.

PROSECUTOR: Mr. Ronell?

MR. RONELL: No problems.

PROSECUTOR: Mr. Davis?

MR. DAVIS: *I don't believe that—what is it? .01—.10 is a standard rule for everybody?*

PROSECUTOR: *I assume that the legislature has taken that into account and has come up with a .10 alcohol concentration as the point where everyone—*

DEFENSE COUNSEL: Objection. Your Honor. It is outside the record and a misstatement of law and it's the personal opinion of the prosecutor and we object.

THE COURT: Overruled.

PROSECUTOR: Did we understand what I said?

UNIDENTIFIED JUROR: I understand what you said, but did you understand what I said?

PROSECUTOR: No.

UNIDENTIFIED JUROR: Everybody is different.

PROSECUTOR: But, at the same time—

THE COURT: *The law says that regardless of what different people have or regardless of that, at this point all persons are deemed intoxicated regardless of what their lives are or their differences might be. That is what the law says.* All she is asking is if you can follow the law? That is fine if you can't. That's fine too.

(Emphasis added.)

■ The statements by the judge and prosecutor that a person is "deemed" intoxicated if the person has a blood alcohol concentration of .10 or more is not an accurate statement of the law. Article 6701*l* –1(a) states explicitly that the definition of intoxication as having an alcohol concentra-

tion of .10 or more applies to that article. Further, section 19.05 specifically defines intoxication, for the purposes of that section, as not having the normal use of one's mental or physical faculties by reason of the voluntary introduction of any substance into one's body.

The State's reliance on Tex.Rev.Civ.Stat. Ann. art. 6701*l* –5 § 3(a) (Vernon Supp. 1987) to support its argument that the "per se" definition of intoxication is applicable to the involuntary manslaughter statute is misplaced. Article 6701*l* –5 § 3(a) states as follows:

> Upon the trial of any criminal action or proceeding arising out of an offense under Subdivision (2), Subsection (a), Section 19.05, Penal Code, ... evidence of the alcohol concentration or presence of a controlled substance or drug as shown by analysis of a specimen of the person's blood, breath, urine, or any other bodily substances taken at the request or order of a peace officer, shall be admissible.

This section mandates that a blood specimen analysis is admissible evidence in an involuntary manslaughter trial; it does not, however, alter the definition of intoxication found in § 19.05. We disagree with the Corpus Christi Court of Appeals decision approving a trial court's jury charge, in a manslaughter case, that included both definitions of intoxication. *Vargas v. State,* 697 S.W.2d 496, 499 (Tex.App.—Corpus Christi 1985, no writ). In *Vargas,* the appeals court stated that the "[l]egislature expressly made the art. 6701*l* –5 definition of intoxication applicable to § 19.05 of the Penal Code." *Id.* We find no support for this proposition in the statute. Section 19.-05 of the penal code contains its own definition of intoxication, and it is not appropriate to read definitions from other legislative acts into § 19.05.

Because we have found that the trial judge and the prosecutor erred when they stated that an individual was deemed intoxicated if they had an alcohol concentration of .10 or more, the question is whether the error requires reversal of the conviction. We must reverse the judgment unless we determine, beyond a reasonable doubt, that

the error made no contribution to the conviction or to the punishment. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1966); Tex.R.App.P. 81(b)(2).

■ The State argues that the error is harmless, because, on motion of the defense, the court instructed that the intoxication paragraph of the appellant's indictment be abandoned and dismissed. The appellant's indictment stated as follows:

ALONZO RAYNA LOPEZ, JR. hereafter styled the Defendant, heretofore on or about OCTOBER 18, 1984 then and there unlawfully while intoxicated operate a motor vehicle and by accident and mistake cause his vehicle to collide with TOMMY LEE PHARR, hereafter styled the Complainant, causing the death of the Complainant by reason of the *intoxication* of the Defendant.

It is further presented that in Harris County, Texas, ALONZO RAYNA LOPEZ JR., hereafter styled the Defendant, heretofore on or about OCTOBER 18, 1984, did then and there unlawfully, while operating a motor vehicle, did cause his vehicle to collide with the Complainant, by *failing to keep a proper look-out and failing to maintain a single marked lane.*

(Emphasis added.)

The charge of the court only included the second paragraph. The jury is presumed to have followed the charge. Further, the State introduced convincing and uncontradicted evidence through the testimony of Rebstock and Hilton concerning the recklessness of the appellant. Additionally, the blood specimen analysis was properly admitted into evidence pursuant to article 6701*l*-5 § 3(a). We find, beyond a reasonable doubt, that the court's and the prosecutor's error in defining intoxication did not contribute to the appellant's conviction or punishment.

Point of error five is overruled.

■ In point of error six, the appellant argues that the trial court committed reversible error in allowing into evidence the blood test result because no proper predicate was laid, and it contributed to the jury's verdict of guilty. This argument is without merit.

The record reveals that Sherri DeLoach, a medical technologist at Baytown Humana Hospital, conducted the test for alcohol content on the blood specimen that she withdrew from the appellant. De Loach testified that she was registered with the American Society of Clinical Pathologists, and that she had performed many tests on blood samples to determine the blood-alcohol content. De Loach testified that the appellant's blood sample never left her custody from the time she withdrew the sample, until the time that she obtained the results. After withdrawing the sample, she took it to the lab, and centrifuged the blood to separate the serum from the cells. Before De Loach ran the appellant's sample on the machine, she ran a known sample with a known value through the machine. The control test indicated to De Loach that the machine was operating properly. At this time, she tested the appellant's blood sample, and the reading was .104. This test result was properly admitted. *See Beck v. State*, 651 S.W.2d 827, 829 (Tex.App.—Houston [1st Dist.] 1983, no pet.).

Point of error six is overruled.

The judgment of the trial court is affirmed.