**Alonza Rayna LOPEZ, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 676–87.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 11, 1989.

Rehearing Denied Nov. 8, 1989.

**412**

David Mendoza, Brian W. Wice, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., & Calvin A. Hartmann, Winston E. Cochran, Jr., & Jo Ann Lee, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted, after a jury trial, of involuntary manslaughter. V.T.C.A. Penal Code, § 19.05 The trial judge assessed a punishment of five years imprisonment in the Texas Department of Corrections. In a published opinion, the First Court of Appeals affirmed the appellant's conviction. *Lopez v. State*, 731 S.W.2d 682 (Tex.App.—Houston [1st Dist.], 1987). We granted appellant's petition for discretionary review to determine whether the Court of Appeals erred in holding that an erroneous definition of intoxication supplied to prospective jurors during voir dire by the prosecutor and the trial judge in an involuntary manslaughter prosecution was harmless beyond a reasonable doubt.[1] We will reverse.

During voir dire examination, the prosecutor and the trial judge gave the jury the "per se" intoxication definition under Tex. Rev.Civ.Stat.Ann. art. 6701*l*-1(a)(2)(B) (Vernon Supp.1987). Appellant objected to the definition on the grounds that V.T.C.A. Penal Code, § 19.05(b) contained its own definition of intoxication.[2] The trial court overruled the objection.

---

1. We granted discretionary review for the following reasons: (1) the petition presented an important question of law not previously addressed by this Court, Tex.R.App.Pro. 200(c)(2); (2) the decision of the Court of Appeals was in conflict with applicable decisions of this Court, Tex.R.App.Pro. 200(c)(3); (3) and a decision of the First Court of Appeals conflicted with another court of appeals' decision, *Vargas v. State*, 697 S.W.2d 496 (Tex.App.—Corpus Christi, 1985). Tex.R.App.Pro. 200(c)(1).

Although the Corpus Christi Court of Appeals' decision in *Nugent v. State*, 749 S.W.2d 595 (Tex.App.—Corpus Christi, 1988) overruled its holding in *Vargas* resolving the conflict between the First and Thirteenth Courts of Appeals, the petition continues to present an important question of law that should be decided by this Court. Tex.R.App.Pro. 200(c)(2).

2. V.T.C.A. Penal Code, § 19.05(b) has since been amended to adopt the art. 6701*l*-1(a)(2)(B) definition of intoxication.

At trial, Michael Rebstock testified that while driving east on highway 225 in Harris County, Texas, he saw a man waving at him from a ditch next to the left lane of the two eastbound lanes. Rebstock slowed down to see what the problem was. He then backed his Chevrolet Blazer up to where the man was, parking with the left tires of his vehicle completely on the median and with his right tires three or four feet from the road. The headlights of the Blazer were on, and the left turn signal was flashing. It was almost daybreak, and there was very little traffic on the road.

The man in the ditch, Tommy Lee Pharr, walked up to Rebstock's window, and said that his car had been forced off the road by an 18-wheeler. As Rebstock was telling Pharr that he would try to push or pull him out, Pharr stepped backward as if to give Rebstock room to get out of his vehicle. Rebstock noticed that Pharr appeared to be looking behind the truck. Before Rebstock could get out of the truck, there was a loud noise, and Rebstock was knocked unconscious for a few seconds. He testified he did not hear a horn or any tire squeals before the crash of the vehicle into his Blazer.

After he awoke, Rebstock crawled out of the window of his truck. The truck was upside down, about forty feet down the road from its original location. Rebstock looked down the road where he saw the body of Tommy Pharr lying in the grass with his head on the gravel. Rebstock checked on the condition of Pharr, and discovered that he was seriously injured. Pharr later died of his injuries.

Rebstock then checked on the condition of the appellant. The appellant's car had come to rest about 30′ past Pharr's body in the ditch. The car's lights were still on and steam was coming from under the hood. Appellant's leg was dangling out of the driver's side, his body sprawled across the front seat. Rebstock testified that the appellant's car "smelled like a brewery." Rebstock stated that he did not see any liquor or liquor bottles in the car, nor did he smell any alcohol on the appellant's body or breath.

Rick Hilton, a City of La Porte police officer trained in traffic accident investigation, arrived at the scene at 5:18 a.m. Hilton testified that his investigation confirmed that Rebstock's vehicle had been parked off the road, and that there were no visible skid marks.

Hilton testified that he believed that the appellant's vehicle completely left the highway to strike Rebstock's vehicle, and that it was appellant's vehicle that struck Pharr. The stretch of road where the accident occurred was straight, the lanes were clearly marked, and there was nothing that would have obstructed the driver's view. Hilton testified that the cause of the accident was a failure to keep a proper lookout. The jury was instructed to disregard Hilton's testimony concerning the failure to keep a proper lookout after appellant objected that this was not within the officer's personal knowledge. Hilton conceded that it was possible that Rebstock's vehicle might have struck Pharr, but the results of his investigation indicated the contrary. Hilton could not determine if the appellant had been speeding from his investigation.

Hilton also testified that he smelled a faint odor of alcohol that appeared to be coming from inside the appellant's vehicle. No alcohol containers were recovered from inside the appellant's vehicle or from the area around it. Hilton had not listed being under the influence of alcohol as a contributing factor in his accident report. The sole contributing factor listed by Hilton was "driving on the shoulder of the road."

Sherri DeLoach, a medical technologist at Baytown Humana Hospital, testified that she took a blood specimen from the appellant immediately following his arrival at the hospital. The blood-alcohol level measured .104 grams per 100 milliliters.

Jesse Blalock, a breath/alcohol-testing technical supervisor at North Harris County College, testified as to the relation between blood-alcohol content and intoxication. He also testified as to the effect of alcohol on a person's motor responses.

Following his conviction, appellant filed his motion for new trial. On December 3, 1985, a hearing was held on the motion.

Appellant alleged that error had been committed during voir dire when the prosecutor opined that the .10% "per se" intoxication definition under Tex.Rev.Civ.Stat. Ann. art. 6701*l*–1(a)(2)(B) [3] was applicable to the instant prosecution and the trial judge, in his comments, put his imprimatur on that opinion. Appellant maintained that V.T.C.A. Penal Code, § 19.05(b) contained its own definition of intoxication.[4] Appellant contended that this erroneous "definition," when coupled with the testimony of Ms. DeLoach concerning the .104% blood-alcohol results, unfairly prejudiced the jury against him.

In support of his motion, appellant submitted the sworn affidavits of two jurors who had served on the case, Mrs. Kathleen Echtenkamp and Mr. Richard J. Gager.[5] Both of the jurors attested that Sherri DeLoach's testimony concerning appellant's blood-alcohol content had "some effect" on their decision to return a guilty verdict as to appellant "recklessly causing the complainant's death by failing to keep a proper lookout or failing to maintain a single marked lane." The two jurors agreed that Ms. DeLoach's testimony concerning blood-alcohol content proved to them that appellant was legally intoxicated at the time of the accident. In response to how they learned that intoxication was defined, Mr. Gager attested "from the prosecutor at jury selection." Mrs. Echtenkamp attested "from the prosecutor at jury selection; from the judge; and from other reading."

In her affidavit, Mrs. Echtenkamp attested that she understood the definition of intoxication to be: "ANYONE WHO HAS A BLOOD ALCOHOL LEVEL OF .10% OR MORE IS CONSIDERED TO BE INTOXICATED." The trial court overruled appellant's motion for new trial.

In the Court of Appeals, the appellant argued that the trial court committed error in allowing the prosecutor and the court, during voir dire examination, to give the jury panel the "per se" intoxication definition under Tex.Rev.Civ.Stat.Ann. art. 6701*l* –1(a)(2)(B), contrary to the requirements of V.T.C.A. Penal Code, § 19.05(b), in violation of V.A.C.C.P. art. 1.04.[6]

■ During voir dire examination, the following exchange occurred:

THE PROSECUTOR: Yes, the other way to prove intoxication is to prove that this defendant or that person has lost—a person has a .10 alcohol concentration in his system.

DEFENSE COUNSEL: We object to this definition as not being a definition explained by law under Section 19.05 in the Texas Penal Code.

THE PROSECUTOR: Your Honor—

THE COURT: Overruled.

THE PROSECUTOR: —the legislature found that based on studies and tests, everyone has lost the normal use of mental and physical faculties—

DEFENSE COUNSEL: Objection, Your Honor. That is a misstatement of the

---

**3.** Tex.Rev.Civ.Stat. art. 67011–1(a) provides that:

(a) *In this article:*
(1) 'Alcohol concentration' means:
(A) the number of grams of alcohol per milliliter of blood;
(B) the number of grams of alcohol per 210 liters of breath; or
(C) the number of grams of alcohol per 67 milliliters of urine.
(2) *'Intoxicated' means:*
(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more of those substances into the body; or
(B) *having an alcohol concentration of 0.10% or more.* (emphasis added)

**4.** V.T.C.A. Penal Code, § 19.05 stated as follows:

(a) A person commits an offense if he:

(1) recklessly causes the death of an individual; or
(2) by accident or mistake when operating a motor vehicle while *intoxicated* and, by reason of such intoxication, causes the death of an individual.
(b) *For purposes of this section, 'intoxication means that the actor does not have the normal use of His mental or physical faculties by reason of the voluntary introduction of any substance into his body.* (emphasis added)

**5.** No valid objection was made to the introduction of these affidavits.

**6.** V.A.C.C.P. art. 1.04 states as follows:

No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

law as to what the legislature has found or not found. If she would restrict her remarks to a definition, if she is going to define intoxication well—

THE COURT: I will sustain the objection. Don't go into the history of the amount.

THE PROSECUTOR: Yes, Your Honor.

In a case where evidence is presented to you that a person has a .10 alcohol concentration in his blood at the time that he was operating a motor vehicle, could each of you find that this person by law was intoxicated? Anybody on the first row that could not do that? If it's confusing I will restate it.

THE COURT: She is saying that is what the law says. She is merely asking if the situation arises, could you follow the law that was presented to you?

\*     \*     \*     \*     \*     \*

THE PROSECUTOR: Okay. The law right now says if a person has .10 alcohol concentration in his blood, he is deemed intoxicated.

\*     \*     \*     \*     \*     \*

THE PROSECUTOR: I assume that the legislature was taken that into account and has come up with a .10 alcohol concentration as the point where everyone—

DEFENSE COUNSEL: Objection. Your Honor. It is outside the record and a misstatement of law and it's the personal opinion of the prosecutor and we object.

THE COURT: Overruled.

THE PROSECUTOR: Did you understand what I said?

UNIDENTIFIED JUROR: I understand what you said, but did you understand what I said?

THE PROSECUTOR: No.

UNIDENTIFIED JUROR: Everybody is different.

THE PROSECUTOR: But, at the same time—

THE COURT: The law says that regardless of what different people have or regardless of that, at this point all persons are deemed intoxicated regardless of what their lives are or their differences might be. That is what the law says. All she is asking is if you can follow the law? That is fine if you can't. That's fine too.

The Court of Appeals correctly held that the statements by the judge and prosecutor that a person is "deemed" intoxicated if the person has a blood-alcohol content of .10% or more was not an accurate statement of the then existing law in an involuntary manslaughter prosecution. *Lopez*, 731 S.W.2d at 686.

As the Court of Appeals noted, art. 6701*l*–1(a) provides explicitly that the definition of intoxication as having an alcohol concentration of .10% or more applies to that article. *see also Forte v. State*, 707 S.W.2d 89, 95 (Tex.Cr.App.1986). The then existing V.T.C.A. Penal Code, § 19.05(b) defined intoxication in the following manner: " 'intoxication' means that the actor does not have the normal use of his mental or physical faculties by reason of the voluntary introduction of any substance into his body." *Id.* It was not appropriate to have read definitions from other legislative acts into section 19.05. Therefore, the Court of Appeals correctly held that error occurred when the trial judge and the prosecutor imported the definition of intoxication applicable to art. 6701*l*–1(a) into an involuntary manslaughter prosecution.

In this Court, the crux of appellant's petition for discretionary review centers on whether the Court of Appeals correctly determined beyond a reasonable doubt that the error complained of did not contribute to the conviction or the punishment of the appellant under Tex.R.App.Pro. 81(b)(2).

In the Court of Appeals, the State argued that the error was harmless because, on the motion of the appellant, the trial court instructed the jury that the intoxication paragraph of the indictment was abandoned and dismissed.[7]

---

7. The indictment stated as follows:

ALONZO RAYNA LOPEZ, JR. hereafter styled as the Defendant, heretofore on or about October 18, 1984 then and there unlaw-

fully while intoxicated operate a motor vehicle and by accident and mistake cause his vehicle to collide with Tommy Lee Pharr, hereafter styled the Complainant, causing the

The Court of Appeals held that the error was harmless, basing its holding on the following rationale:

> The charge of the court only included the second paragraph. The jury is presumed to have followed the charge. Further, the State introduced convincing and uncontradicted evidence through the testimony of Rebstock and Hilton concerning the recklessness of the appellant. Additionally, the blood specimen was properly admitted into evidence pursuant to article 6701*l*–5 sec. (3)(a).

731 S.W.2d at 687. That court followed this Court's line of cases that hold that it is presumed that the jury follows the instructions given by the judge, in the manner presented, although the presumption is rebuttable. *Rose v. State*, 752 S.W.2d 529, 554 (Tex.Cr.App.1987) (opinion on rehearing); *Cobarrubio v. State*, 675 S.W.2d 749, 752 (Tex.Cr.App.1983).

In his petition for discretionary review, the appellant contends that the Court of Appeals erred in its harmless error analysis. The appellant argues that the misstatements of law by the prosecutor and the trial judge to the jury, when coupled with the affidavits of Mrs. Echtenkamp and Mr. Gager, and the lack of any curative instruction, refutes the Court of Appeals' holding that the error was harmless beyond a reasonable doubt.

In reply, the State argues in the alternative that the Court of Appeals analysis under Tex.R.App.Pro. 81(b)(2) is essentially a factual inquiry that is not reviewable by this Court or that the Court of Appeals' determination is not so out of the ordinary as to require supervisory review by this Court. As a consequence, the State argues no question of law is presented to this Court for review. Having previously pointed out what question of law is presented at p. 412, *ante*, the State's contention is without merit.

■ In quantifying the effect of an error under Tex.R.App.Pro. 81(b)(2), a reviewing court should not look in isolation at legally admitted evidence presented at trial. *See generally Harris v. State* (Tex.Cr.App. No. 69,366 delivered June 28, 1989). "The question ... is not whether the legally admitted evidence was sufficient to support the ... [verdict] ... but rather, whether the State has proved beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284, 295 (1988).

In the instant case, the error was that the jury was incorrectly apprised of the law. Both the prosecutor and the trial judge incorrectly informed the jury that a person having a .10% blood-alcohol content is deemed to be intoxicated, for the purposes of the alleged offense. Nothing in the record would suggest that the jury had any reason not to accept this misstatement of the law. In fact, the trial judge's ratification of the misstatement was almost certainly accepted by the jury. See *Harrell v. State*, 120 Tex.Crim. 359, 47 S.W.2d 311 (1932) ("To the jury, the language and the conduct of the trial court have a special and peculiar weight."); *Davis v. State*, 114 Tex.Crim. 72, 24 S.W.2d 417, 418 (1929) ("Jurors are prone to seize with alacrity upon any conduct or language of the trial judge they may interpret as shedding light upon his view of the weight of the evidence, or the merits of the issues involved.").

The issue of intoxication was also very important within the context of the trial. The State clearly believed that a suggestion that appellant was intoxicated at the time of the offense was valuable to its cause. A significant amount of trial time was spent developing this idea. Rebstock testified that the appellant's car "smelled like a brewery." Hilton testified he smelled a faint odor of alcohol though he

death of the Complainant by reason of the intoxication of the Defendant.

It is further presented that in Harris County, Texas, ALONZO RAYNA LOPEZ, JR., hereafter styled the Defendant, heretofore on or about October 18, 1984, did then and there unlawfully, while operating a motor vehicle, did cause his vehicle to collide with the Complainant, by failing to keep a proper lookout and failing to maintain a single marked lane.

was unable to locate the source of the smell. DeLoach testified that appellant's blood-alcohol was .104%. Blalock testified as to the correlation between blood-alcohol and intoxication.

In addition to the harm that may be inferred from the record, appellant provided evidence from the two jurors concerning the effect of this misstatement. At the hearing on his motion for new trial, the appellant presented the affidavits from the two jurors who attested that they had relied upon the erroneous definition in their deliberations. They attested that Sherri DeLoach's testimony had "some effect" on their decision to return a guilty verdict. The jurors agreed that Ms. DeLoach's testimony concerning blood-alcohol content proved to them that appellant was legally intoxicated at the time of the accident.

The jurors' affidavits reveal that the error was not cured by the deletion of the intoxication paragraph in the indictment, as the Court of Appeals reasoned. The fact that Sherri DeLoach's testimony concerning the lab results may have been properly admitted does not foreclose the possibility that the appellant's conviction was affected by the error, nor does the fact that there was sufficient evidence to support the verdict render the error harmless.

■ This Court is unable to state that the error did not contribute to the appellant's conviction. In light of the jurors' affidavits, the relevant facts, and the law, it is possible that a rational trier of fact could have reached a different result had the error not occurred. *Harris*, slip op. at 35.

The judgments of the Court of Appeals and the trial court are reversed and the cause is remanded to the trial court for action consistent with this opinion.

TEAGUE, J., concurs.

McCORMICK, P.J., DAVIS and WHITE, JJ. dissent.