Opinion issued August 11, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NOS. 01-10-00251-CR, 01-10-00252-CR

———————————

Ronald Anthony Leblanc, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 239th District Court 

Brazoria County, Texas



Trial Court Case No. 58,935, Counts 1 & 2

 



 

MEMORANDUM OPINION

          A
jury found appellant, Ronald Anthony Leblanc, guilty of the offense of manslaughter[1] and assessed his punishment
at confinement for seven years.  In the
same proceeding, the jury also found appellant guilty of the offense of
aggravated assault,[2]
assessed his punishment at confinement for ten years, and recommended that the
sentence be suspended and appellant be placed on community supervision.  In four points of error, appellant contends
that the evidence is legally insufficient to support his convictions and, in
regard to his manslaughter conviction, the trial court erred in admitting
evidence concerning the presence of cocaine metabolites and marijuana in his blood,
the effects of cocaine “withdrawal,” and the presence of marijuana in his
truck.  

          We
affirm.

Background

Texas Department of Public Safety
(“DPS”) Trooper J. Strawn testified that on September 3, 2008, he was
dispatched to a “major crash” on FM 523. 
Upon arrival at the scene, he saw that an eighteen-wheeler truck, a
pickup truck, a passenger car, and a green Honda sedan had been involved in a collision.  Strawn noted that Michael Jarmin, a police
officer, was “pinned underneath” the “cab of the eighteen-wheeler” and Paul
Delcambre, the driver of the pickup truck, was dead.  Strawn explained that the area surrounding
the collision was flat and “pretty open” and the road had an “improved shoulder,”
wide enough for a passenger car, but not for an eighteen-wheeler.  As part of Strawn’s investigation, he
performed a search of the cab of the eighteen-wheeler, which appellant had been
driving, where he found a small amount of marijuana inside a “Skoal can.”  

Chrissie Toner testified that on
September 3, 2008, she saw the collision when she was stopped at “road
construction” on FM 523.  She explained
that there were cars stopped on both sides of the road when she saw the
eighteen-wheeler “coming down” the road from the opposite direction, “veer[]
over a little bit [from its lane] and then veer[] back [into its lane].”  She explained that after the eighteen-wheeler
had crossed approximately “halfway” into the north lane of traffic, it went
back into its lane and then turned over onto its side, hit the car in front of
it, and turned over.  Toner noted that
two police officers had been directing traffic and she had seen warning signs
as she approached the construction area. 


          Larry
Lee Nunn, II, testified that while he was driving down FM 523, he came upon the
construction zone, which had been marked with orange triangle signs, and he saw
a police officer with a stop sign.  Approximately
one minute after Nunn came to a complete stop, a pickup truck pulled up behind
him and came to a complete stop.  Shortly
thereafter, he saw the police officer, who had a “surprised look” on his face,
run to his left towards a ditch, when Nunn felt an impact.  The impact caused his car to spin around,
and, when he came to a stop, Nunn saw a pickup truck in a ditch and the
eighteen-wheeler on its side.  

DPS Trooper R. Peck testified that
on September 3, 2008, he went to the hospital to which appellant had been taken
after the collision to speak with him. 
Appellant agreed to provide Peck with a voluntary blood specimen and a
statement concerning the collision.  In
his statement, appellant explained that while driving his truck down FM 523, he
bent over to pick up a drink and, when he looked up, he saw brake lights and swerved
to miss the car in front of him.  

Joseph Hinton, an accident
reconstruction expert, testified that he collected forensic data from the scene
of the collision including measurements, the location of the cars involved, the
coefficient friction of the roadway, warning signs, tire marks, and the point
of impact.  From such data, Hinton can
determine if a driver that caused a collision was “afforded a distance in which
to be able to prevent an accident, i.e., known as [the] zone of
preventability.”  Based on the data and
conditions of the collision scene, Hinton opined that appellant needed 380.6
feet to perceive, react, and stop his eighteen-wheeler in order to prevent the
collision by braking, and he noted that there was no indication of braking
prior to impact.  Hinton opined that
appellant could have also prevented the collision by “steering and evading,” by
swerving to avoid “clipping” the cars in front of him.  Hinton explained that this could have been
done at 155.25 feet, or in 1.76 seconds. 
Hinton  further opined that
appellant had failed to properly steer, brake, and control his speed.  

Alvaris Jackson, Jr., a Texas
Department of Transportation (“TxDOT”) construction inspector, testified that
as part of his duties, he inspects construction and roadwork zones for proper
placement of warning signs.  In doing so,
he performs a “ride through” where he drives from one end of the constriction
zone to the other to “make sure all the signs are out and in position.”  On September 3, 2008, he arrived at the construction
site on FM 523 and performed a “ride through.” 
Jackson noted that there were at least six signs at the job site, three
on each end, consisting of a “roadwork sign,” a “flagman ahead sign,” and a
“picture sign.”  After ensuring that the
signs were properly set out, he spoke with the foreman about the job,
equipment, and materials.  Jackson
explained that he remained on the site for the entire day and he performed a
“ride through” approximately every twenty minutes to check the signs.  While sitting “off to the side” of the site,
he saw a cloud of dust and an eighteen-wheeler on its side.  Jackson contacted emergency assistance, and,
after “checking out” the scene of the collision, he performed another “ride
through,” where he found all of the signs in place.  

David Cubine, a TxDOT contract
maintenance inspector, testified that on September 3, 2008, he went to the job
site on FM 523 after learning that a collision had occurred.  Cubine explained that because the speed limit
on FM 523 is sixty miles per hour, the minimum distance between the roadwork
signs is 500 feet.  When Cubine arrived
at the job site, he measured the distance between the signs and found they were
spaced over 500 feet apart and there were four roadwork signs on each side of
the construction zone.  

Mike Manes, the laboratory director
for the Brazoria County Sheriff’s Office, testified that after he received a
specimen of appellant’s blood, which had been taken from appellant at the
hospital following the collision, he initially tested it for the presence of
alcohol, amphetamines, cocaine, benzodiazepine, opiates, and marijuana.  The testing revealed the presence of
benzoylecgonine, the primary metabolite of cocaine.  According to testing protocol, Manes
performed a second test that confirmed that appellant’s blood specimen did
indeed contain benzoylecgonine in approximately 1.28 milligrams per liter.  Manes noted that this is a “moderate amount”
and “shows a recent history of consuming cocaine.”  

Manes explained that when an
individual ingests cocaine, the body metabolizes the cocaine into benzoylecgonine
before eliminating it.  Benzoylecgonine
has an approximate half-life of four and one-half hours to five hours, but the
time can “vary quite a bit individual to individual.”  Cocaine, the parent drug of benzoylecgonine,
has a half-life from anywhere to “as little as a half hour or less” to two or
three hours; however, like benzoylecgonine, it “varies widely [from] individual
to individual.”  Manes noted that the
term “half-life” is a measure of time in which a certain amount of a narcotic
starting in an individual’s body is half eliminated.  Although he could determine the “quantification”
of the cocaine metabolite in appellant’s blood specimen, Manes could not
determine the exact time that appellant had consumed cocaine.  He could state only that “generally
speaking,” based on the half-life, appellant had consumed cocaine within three
days prior to the collision.  Manes opined
that based on the blood specimen, cocaine was not present in appellant’s system
when the blood sample was obtained because the parent drug, cocaine, was not
detected.  He noted that if a person
ingests cocaine, there would not be any “active drug” in their system three
days later, and, “in that case, there would be no physiological or
pharmacological effect on the individual at that point in time.”  Manes stated that it is “fair to say” that
appellant was not under any pharmacological influence as a result of cocaine usage
at the time of his blood draw because Manes did not detect cocaine in
appellant’s blood specimen.    

Manes further explained that
cocaine is a stimulant that has a “profound psychological withdrawal” effect.  “When the concentration of the parent drug
starts going down in the body, then the craving desire for the drug
starts.”  Withdrawal can cause
“cravings,” “physical fatigue to become more pronounced,” and “other changes in
mood, behavior,” including depression, agitation, and aggressiveness.  However, Manes explained that all he could
testify to in this specific case “is the concentration of the drug metabolite
in the blood”; he could not “associate a generalized statement of behavior” to
appellant based on his analytical data. 
Manes also did not have any evidence to opine as to whether or not
appellant’s ingestion of cocaine “had any effect at all upon his driving.”  

Paul Van Dorn, a chemist/crime lab
director at the Brazoria County Sheriff’s Office, testified that appellant’s
blood contained cocaine metabolite and “THC,” a “pharmacologically active
compound in marijuana.”  Van Dorn noted
that THC can remain in one’s blood from one to three days, but there is no
definite time that THC remains in the blood. 
Van Dorn explained that he had no way to determine the pharmacological
effect of “this small amount of THC” on one’s body.  His screening only showed the presence of THC,
it did “not show intoxication as a result of the ingestion of marijuana.”  Van Dorn also inspected the substance found in
appellant’s eighteen-wheeler and confirmed it was marijuana in the amount of
0.8059 grams.          

Sufficiency of the Evidence

In his first point of error, appellant argues that the evidence is
legally insufficient to support his manslaughter and aggravated assault convictions
because the State failed to prove that he was aware of and consciously
disregarded the risk created by his conduct, which ultimately caused the
collision.  He asserts that he was not
“consciously aware of any risk until he struck the vehicles in front of
him.”  He further asserts that he “did
not perceive the risk until the accident occurred and it was too late to
prevent it.”  

We review the legal sufficiency of the evidence “by
considering all of the evidence in the light most favorable to the prosecution”
to determine whether any “rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct.
2781, 2788–89 (1979).  Evidence is legally insufficient when
the “only proper verdict” is acquittal.  Tibbs v. Florida, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218 (1982).  Our role is that of a
due process safeguard, ensuring only the rationality of the trier of fact’s
finding of the essential elements of the offense beyond a reasonable
doubt.  See Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988).  We give deference to
the responsibility of the fact finder to fairly resolve conflicts in testimony,
to weigh evidence, and to draw reasonable inferences from the facts.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  However, our duty requires us to “ensure that
the evidence presented actually supports a conclusion that the defendant
committed” the criminal offense of which he is accused.  Id. 

Here, appellant stood accused by
indictment of committing the offense of manslaughter by “recklessly” causing
the death of Paul Delcambre by causing his
truck to collide with the car driven by Delcambre by failing to heed warning
signs indicating that he be prepared to stop and not stopping his truck,
driving his truck while he had cocaine and marijuana in his body, failing to
maintain a proper lookout, failing to control the speed of his truck, failing
to properly steer his truck, and failing to properly apply his brakes.  See Tex.
Penal Code Ann. § 19.04 (Vernon 2011).  Appellant also stood accused of committing
the offense of aggravated assault by “recklessly” causing serious bodily injury
to Officer Jarmin by driving a motor vehicle and failing to maintain a proper
lookout and failing to heed warning signs to be prepared to stop.  See id.
§ 22.02 (Vernon 2011).  In regard to the
culpable mental state of recklessness, the trial court instructed the jury that:


A person acts recklessly, or is reckless, with
respect to circumstances surrounding his conduct or the result of his conduct
when he is aware of but consciously disregards a substantial and unjustifiable
risk that the circumstances exist or the result will occur.  The risk must be of such a nature and degree
that its disregard constitutes a gross deviation from the standard of care that
an ordinary person would exercise under all the circumstances as viewed from
the actor’s standpoint.  

 

See id. § 6.03(c) (Vernon 2011).  

When recklessness is an element of an offense, the indictment must
allege, with reasonable certainty, the act or acts relied upon to constitute
recklessness.  Tex. Code Crim. Proc. Ann. art. 21.15 (Vernon 2010).  When a charge to a jury contains several
disjunctive means of recklessness, the jury’s verdict will not be reversed for
insufficiency of the evidence if the evidence is sufficient to establish at
least one of the alternative means.  Hooper v. State, 214 S.W.3d 9, 14 (Tex.
Crim. App. 2007); see Brooks v. State,
990 S.W.2d 278, 283 (Tex. Crim. App. 1999); Hathorn
v. State, 848 S.W.2d 101, 108 (Tex. Crim. App. 1992).  

Here, appellant asserts that there is “no evidence which substantiates a
finding that [he] was aware of the risk [of his conduct] or that he consciously
disregarded it.”  He further asserts that
his “recognition of what was in front of him occurred too late for either
braking or swerving.”  He argues that
because he should have been aware of the risk, but was not actually aware of
the risk, the evidence in this case supports only a finding of criminal
negligence, of which he was not accused. 


Mental culpability is of such a nature that it generally can only be
inferred from the circumstances under which a prohibited act occurred.  Dillon
v. State, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978).  Circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor.  Guevara
v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).  Furthermore, an actor need not be aware of a
specific risk of another’s death in order to commit manslaughter.  Trepanier
v. State, 940 S.W.2d 827, 829 (Tex. App.—Austin 1997, pet. ref’d).  The trier of fact makes its determination of a
culpable mental state from all of the circumstances in a case and may make
reasonable inferences from the acts, words, and conduct of an accused.  See Manning
v. State, 84 S.W.3d 15, 20 (Tex. App.—Texarkana, 2002), rev’d on other grounds, 114 S.W.3d 922
(Tex. Crim. App. 2003) (sufficient evidence of recklessness where driver of
eighteen-wheeler truck failed to brake or slow down where warning signs of
construction posted up to 3,000 feet before area where traffic stopped); Arellano v. State, 54 S.W.3d 391, 393
(Tex. App.—Waco 2001, pet. ref’d) (sufficient evidence of recklessness where
there were multiple visible signs warning of need to reduce speed posted before
dangerous curve and skid marks showed excessive speed); Porter v. State, 969 S.W.2d 60, 64 (Tex. App.—Austin 1998, pet. ref’d)
(sufficient evidence of recklessness where testimony revealed that defendant
was on wrong side of road moments before collision, defendant stated he was
“very much fatigued” on an answering machine, and there was evidence of
controlled substances in defendant’s system); Trepanier, 940 S.W.2d at 830 (sufficient evidence of recklessness
where driver moved onto shoulder to pass on the right and struck a bicyclist); Rodriguez v. State, 834 S.W.2d 488, 490
(Tex. App.—Corpus Christi 1992, no pet.) (sufficient evidence of recklessness
where defendant told officer she took sharp turn too fast indicating she was
aware of the risk); Lopez v. State,
731 S.W.2d 682, 684 (Tex. App.—Houston [1st Dist.] 1987), rev’d on other grounds, 779 S.W.2d 411 (Tex. Crim. App. 1989) (sufficient
evidence of recklessness where driver failed to maintain single marked lane and
struck pedestrian and parked truck on shoulder of road).    

          Viewing the evidence in the light most
favorable to the prosecution, appellant, before colliding his truck into the
complainant’s, did not apply the brakes of his truck, slow down, or attempt to
avoid the collision within the “zone of preventability.”  Hinton opined that appellant should have been
able to avoid the collision by stopping his truck by braking within 380.6 feet
of the collision or swerving within 155.25 feet of the collision.  Instead, appellant veered one-half of the way
into the lane of opposing traffic, veered it back, and then caused his truck to
strike the stopped car in front of him. 
The evidence reveals that the two cars in front of appellant had come to
a complete stop and there were four construction zone warning-signs posted up
to 3,500 feet before the area in which traffic was stopped.  As appellant approached the construction
zone, he drove his truck past a visible construction warning sign posted at
3,500 feet before the collision area.  As
he continued his approach, appellant drove past three additional signs, which
had been placed at least 500 feet apart, warning of the construction zone and
flagger ahead.  Despite the multiple
warning signs, appellant failed to slow his truck or attempt to brake.  Furthermore, by his own statement, appellant
bent down in his seat to pick up a drink when the construction signs clearly
indicated that a construction zone with a flagman was ahead.  When appellant saw the cars stopped in front
of him, he did attempt to swerve to miss the cars; however, there were multiple
warning signs posted that appellant did not heed.  From this evidence, a rational trier of fact
could have found beyond a reasonable doubt that appellant was aware of and
consciously disregarded the substantial and unjustifiable risk he took by
failing to heed the signs warning that he be prepared to stop and not stopping
his truck, failing to maintain a proper lookout, failing to control the speed of
his truck, failing to properly steer his truck, and failing to properly apply
his brakes.  Accordingly, we hold that
the evidence is legally sufficient to support appellant’s convictions.  

          We
overrule appellant’s first point of error. 
  

Admission of Evidence

          In
his second, third, and fourth points of error, appellant, in regard to his
conviction for the offense of manslaughter, argues that the trial court erred
in admitting evidence concerning the presence of the cocaine metabolite and
marijuana in his blood on the day of the collision, the effects of cocaine
withdrawal, and the presence of marijuana in his truck because the evidence was
irrelevant, more prejudicial than probative, speculative, and constituted
inadmissible character evidence.  

A trial court’s admission of
evidence is reviewed under an abuse of discretion standard.  Torres
v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  A trial court abuses its discretion if it
acts arbitrarily or unreasonably, without reference to any guiding rules or
principles.  Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App.
1990).  When considering a trial court’s
decision to admit or exclude evidence, we will not reverse a trial court’s
ruling unless it falls outside the “zone of reasonable disagreement.”  Green
v. State, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).  

“Relevant evidence”
means evidence having any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable
than it would be without the evidence.  Tex. R. Evid. 401.  Evidence that is not relevant is
inadmissible.  Tex. R. Evid. 402.  Relevancy is determined by
whether “a reasonable person, with some experience in the real world, believes
that the particular piece of evidence is helpful in determining the truth or
falsity” of any fact of consequence.  Montgomery, 810 S.W.2d at 376.  The evidence does not have to prove or
disprove a particular fact; it is sufficient if the evidence provides “a small
nudge toward proving or disproving some fact of consequence.”  Stewart v. State, 129
S.W.3d 93, 96 (Tex. Crim. App. 2004).  Nonetheless, relevant evidence “may be
excluded if its probative value is substantially outweighed by the danger of
unfair prejudice.”  Tex. R. Evid. 403.  The opponent of the
evidence must demonstrate that the negative attributes of the evidence
substantially outweigh any probative value. 
Montgomery, 810 S.W.2d at 377.  Moreover, evidence of other crimes, wrongs,
or acts is generally not admissible to prove the character of a person in order
to show action in conformity therewith.  Tex. R. Evid. 404(b).  

Narcotics in Blood 

Appellant first asserts that the
evidence that his blood contained the primary metabolite of cocaine and “THC,”
an active compound in marijuana, was not relevant and any probative value it
had was substantially outweighed by unfair prejudice.  

Although the indictment alleged
in pertinent part that appellant recklessly caused the death of Paul Delcambre,
among other things, by “driving a motor vehicle with cocaine and marihuana in
[his] body,” appellant asserts that the State did not show that the
presence of cocaine or marijuana in his body contributed to his failure to
maintain a proper lookout or avoid colliding with a motor vehicle.  Appellant points to Manes’s testimony that he,
based only on the presence of the cocaine metabolite, could not determine how
much cocaine appellant had ingested, when he ingested it, or the effect it
had.  Appellant argues that absent
evidence of dosage or time of ingestion, there is no evidence as to the effect
the narcotics had on him at the time of the collision.  He argues that the presence of the cocaine
metabolite “did not make it any more or less likely that he was acting in a
reckless manner prior to the accident or that the presence of the metabolite in
any way contributed to [the complainant’s] death.”  In regard to the presence of THC in his
blood, appellant argues that because Van Dorn could not testify as to an exact
date or time that appellant had ingested marijuana, there is no evidence that
he was intoxicated as a result of the ingestion of marijuana.  

However, as noted above, evidence need not prove or disprove a particular
fact by itself to be relevant; it need only provide “a small nudge toward
proving or disproving” a fact of consequence. 
Stewart, 129 S.W.3d at 96.  Here, the indictment alleged that appellant’s
recklessness was caused, in part, by “driving a motor vehicle with cocaine and
marijuana in his body.”  The presence of
the cocaine metabolite and THC in appellant’s blood was evidence probative of
this allegation.  See Dunn v. State, 176 S.W.3d 880, 883 (Tex. App.—Fort Worth 2005,
no pet.) (presence of substance was element of charged offense of criminally
negligent homicide and consequently test results were relevant).  

Nevertheless, relevant evidence “may be excluded if
its probative value is substantially outweighed by the danger of unfair prejudice.”  Tex. R. Evid. 403. 
The opponent of the evidence must demonstrate that the negative
attributes of the evidence substantially outweigh any probative value.  Montgomery, 810 S.W.2d at 377.  The relevant criteria in a rule 403 analysis include, but are not limited to (1) the
probative value of the evidence; (2) the potential to impress the jury in some
irrational yet indelible way; (3) the time needed to develop the evidence; and
(4) the proponent’s need for the evidence.  State v.
Mechler, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); Manning, 114
S.W.3d at 927.   

The first rule 403 factor asks how compellingly the evidence serves to
make a fact of consequence more or less probable.  Manning, 114
S.W.3d at 927.  Here, the fact of
consequence is whether cocaine or marijuana was in appellant’s body.  In Manning, a case very similar to the
instant case, the defendant who was driving his eighteen-wheeler truck did not
stop his truck or slow down as he approached a construction site where a line
of cars had stopped.  Id. at 924.  The State offered evidence that a cocaine
metabolite known as benzoylecgonine had been found in the defendant’s blood in
the amount of .15 milligrams per liter, and the testimony revealed that its
presence showed only that at some point earlier in time, appellant had ingested
cocaine.  Id.  Although the State did
not present extrapolation evidence, the Texas Court of Criminal Appeals concluded
that the presence of the cocaine metabolite served to make a fact of
consequence more probable.  Id. at 927.  As in Manning, the evidence of the cocaine metabolite and marijuana in
appellant’s blood served to make a fact of consequence more probable.  See
id.  “The fact that this evidence may
not have been sufficient, by itself, to prove that [appellant’s] actions were
the result of his ingestion of cocaine does not detract from the fact that the
evidence of the metabolite was strong evidence that [appellant] had consumed
cocaine.”  Id. 

The second rule 403 factor
is concerned only with the danger of “unfair” prejudice.  Id.  Although the evidence presented here was
obviously prejudicial to appellant, it was not “unfairly” prejudicial because
it pertained to an allegation in the charging instrument.  See id.
at 928.  Accordingly, the risk of unfair
prejudice did not substantially outweigh the probative value of the evidence.  See id.  

In regard to the third
rule 403 factor, the State spent a significant amount of time on the evidence
of the cocaine metabolite in appellant’s blood. 
Several witnesses were called and recalled in order to elicit testimony concerning
the presence of the metabolite in appellant’s blood.  However, as the court of criminal appeals has
concluded, “Regardless of the length of time spent presenting this evidence,
the evidence of the cocaine metabolite could not possibly have distracted the
jury from the indicted offense because it was proof of the indicted
offense.”  Manning, 114 S.W.3d at 928.  

The fourth rule 403 factor
encompasses the issues of whether the proponent has other evidence establishing
the pertinent fact and whether the fact is related to a disputed issue.  Mechler,
153 S.W.3d at 441.  Here, the evidence of
the presence of the cocaine metabolite and THC was related to a disputed issue:
whether appellant recklessly caused the complainant’s death by driving with
cocaine and marijuana in his body.  And
the State had no other evidence to establish this fact of consequence.  Because the issue was disputed and there was
no other evidence presented to prove the fact, the State’s need for the
evidence was great and weighed in favor of admitting the evidence.  See
Manning, 114 S.W.3d at 928.  

In evaluating all of
the rule 403 factors, we, under the reasoning of Manning, conclude that the sum of the factors weighed in favor of
admissibility.  Accordingly, we hold that
the trial court did not err in admitting evidence that appellant’s blood
contained a cocaine metabolite and marijuana. 


We overrule
appellant’s second point of error.  

Cocaine Withdrawal

          Appellant
next argues that because the indictment did not allege that he was withdrawing
from the effects of cocaine or that any such withdrawal contributed to his
failure to maintain a proper lookout or to avoid the collision, the evidence
about cocaine withdrawal was not relevant, was speculative, and any probative
value it had was outweighed by its prejudicial effect. 

          In Bannister v. State, a DPS chemist
testified that the presence of benzoylecgonine was present in the defendant’s
body, the chemical is produced when the body metabolizes cocaine, it has no
effect on the body but indicates that cocaine had been present, and its
presence does not indicate how or when the cocaine was ingested.  No. 07-04-0479-CR, 2006 WL 2795250, at *5
(Tex. App.—Amarillo Nov. 6, 2006, pet. ref’d) (mem. op.).  The chemist noted that “cocaine is a potent
stimulant which can lead to a ‘crash phase’ or ‘crash effect’ during withdrawal
where the user can experience fatigue and sleepiness and a general lack of
energy.”  Id.  The Amarillo Court of Appeals,
in concluding that the evidence was relevant, noted that the State’s theory was
not that appellant was under the influence of cocaine at the time of the
collision, but that he was fatigued and sleepy because he was suffering from
cocaine withdrawal.  Id. at *6.  The court noted
that this theory fell within the indictment allegation that the defendant
operated a motor vehicle “without sufficient sleep, as a result of the
introduction of cocaine into his body.”  Id. 
The court concluded that the testimony was relevant “because it
established scientific acceptance of the effects of cocaine withdrawal” and it
showed that the defendant had consumed cocaine in the recent past.  Id.  

          Here,
Manes explained that cocaine is a stimulant and it has a “profound psychological
withdrawal” effect, which can cause “cravings,” “physical fatigue to become
more pronounced,” and “other changes in mood [and] behavior,” including
depression, agitation, and aggressiveness. 
Manes noted that “hypothetically” an individual, when the drug
concentration is decreasing or no longer present, could be more focused on
drug-seeking behavior than paying attention to his driving.  Manes emphasized that all he could testify to
in this specific case, however, was “the concentration of the drug metabolite
in the blood” and he could not “associate a generalized statement of behavior”
to appellant based on the analytical data. 
Manes also did not have any evidence to opine as to whether or not
appellant’s ingestion of cocaine “had any effect at all upon his driving.”  Manes’s testimony regarding cocaine
withdrawal was not specific to appellant and related only to the general
effects of cocaine withdrawal.  

Here, again, the indictment alleged
in pertinent part that appellant recklessly caused the death of Paul Delcambre
“by driving a motor vehicle with cocaine and marihuana in his body.”  The State argued that cocaine withdrawal
could cause an individual to become distracted and that this caused appellant
to fail to maintain a proper lookout.  As
noted by the court of criminal appeals, evidence need not, by itself, prove or
disprove a particular fact to be relevant. 
Manning, 114 S.W.3d at
927.  The fact that the testimony
regarding cocaine withdrawal did not conclusively establish that appellant
experienced cocaine withdrawal at the time of the collision did not make it
inadmissible.  See id at 927; see also
Bannister, 2010 WL 2795250, at *6.  Under
the reasoning of Manning, the trial
court could have concluded that the evidence of the effects of cocaine withdrawal
were relevant to appellant’s operation of his truck and it was not unfairly
prejudicial in establishing an element of the charged offense.  114 S.W.3d at 927.  Accordingly, we hold that the trial court did
not err in admitting evidence regarding the effects of cocaine withdrawal.  

We overrule appellant’s third point
of error.  

 

 

Marijuana 

          Finally,
appellant asserts that the State “failed to show that the presence of the
marijuana [in the cab of his truck] made it any more or less likely that he was
acting in a reckless manner prior to the accident” and any probative value of
the evidence was outweighed by the danger of unfair prejudice.  See
Tex. R. Evid. 402, 403.  Although appellant refers us to rule 404,
which prohibits the introduction into evidence of certain character evidence,
he makes no substantive argument concerning rule 404 and has waived any error
regarding the issue.  See Tex.
R. App. P. 33.1.  

In Porter v. State, the defendant was charged with intoxication
manslaughter and manslaughter, but the jury convicted him only of
manslaughter.  969 S.W.2d 60, 67 (Tex.
App.—Austin 1998, pet. ref’d).  Although
the trial court admitted evidence that emergency services personnel found a
spoon and syringe in the defendant’s sock, the Austin Court of Appeals
concluded that the evidence was relevant and not unduly prejudicial because it
was directly related to the charged offense. 
Id.  Here, likewise, the evidence of marijuana
found in the cab of appellant’s truck was directly related to the charged
offense, and its potential to irrationally impress the jury to find guilt on
grounds apart from the offense charge was minimal.  See id.;
Mechler, 153 S.W.3d at 440.  Although the State did spend some time
introducing the evidence of marijuana, it did not spend such an amount of time
as to distract the jury from consideration of the charged offense.  Mechler,
153 S.W.3d at 441.  Accordingly, we hold
that the trial court did not err in admitting evidence that appellant had
marijuana in the cab of his truck at the time of the collision.  

          We
overrule appellant’s fourth point of error. 


Conclusion

          We
affirm the judgments of the trial court. 

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Bland, and Massengale.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 19.04
(Vernon 2011); Trial court cause no. 58,935, count 1; Appellate cause no.
01-10-00251-CR.

 





[2]           See
id. § 22.02 (Vernon 2011); Trial court cause no. 58,935, count 2; Appellate
cause no.01-10-00252-CR.