Alfredo Jaramillo GARCIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–02–00737–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 7, 2003.

---

Lonnie Knowles, Houston, for appellants.

Bridget Holloway, Houston, for appellees.

Panel consists of Justices JOHN S. ANDERSON, SEYMORE, and GUZMAN.

## OPINION

JOHN S. ANDERSON, Justice.

After a bench trial, appellant Alfredo Jaramillo Garcia was found guilty of intoxication manslaughter. Asserting four points of error, he now seeks a reversal of his conviction and a judgment of acquittal, or, in the alternative, a new trial. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 4, 2000, at approximately 8:30 p.m., Darius Johnson and complainant Lydia Onezine walked from their apartment to a nearby convenience store to get ice cream. They left the store to return home at approximately 9:30 p.m. To return to their apartment, they crossed Aldine Bender Road—a seven-lane highway—in the middle of the block.

According to Johnson's testimony at trial, complainant and Johnson crossed three lanes of traffic without incident and were standing in the center left-turn lane waiting for the remaining three lanes of traffic to clear, when Johnson heard the sound of appellant's truck approaching. Before Johnson could push complainant out of the way, appellant's vehicle—a 31,460 lb. wrecker used to haul 18–wheelers—struck complainant, propelling her into the air. Landing 172 feet away in a lane of oncoming traffic, complainant was subsequently run over by a Suburban. She died from blunt force trauma and multiple injuries.

Evidence shows that after the accident, appellant stopped his truck in the lane immediately adjacent to the highway's left-turn lane and exited his vehicle. According to Johnson, appellant emitted a strong odor of alcohol, made a comment about messing up the front of his truck, and "staggered" to the back of the wrecker. Appellant then walked towards the convenience store.

At this point, according to Johnson, Johnson "beat the hell out of" appellant, hitting him in the face, chest, and neck.[1]

---

1. Although Johnson told police at the scene that appellant was beaten up by six or seven other people and that he personally did not assault appellant, Johnson subsequently recanted this story.

Johnson then returned to the scene of the accident and, from a distance, kept an eye on appellant as appellant slowly walked away from the scene. When the police arrived, appellant was apprehended several yards from the accident site. He was still within sight of Johnson and others at the scene.

At trial, several people testified that appellant exhibited signs of being under the influence of alcohol. Four witnesses testified they detected a strong odor of alcohol coming from his person; three testified he appeared disoriented and/or wandered away from the scene; two testified he had blood-shot eyes; six testified he "stumbled" or had trouble maneuvering; and three testified his speech was slurred. There was also testimony appellant fell asleep at the scene after being placed in an officer's patrol car.

Although no testimony or evidence was proffered at trial to show appellant vomited at the scene, appellant contends the strong odor of alcohol coming from his person was due to his having vomited as a result of Johnson's beating. Appellant also contends his disorientation, red eyes, and slurred speech were the result of Johnson's beating as well.

At the scene of the accident, appellant refused to submit to a field sobriety test. He was transported to a Harris County Jail facility where, approximately two hours after the accident, he underwent an involuntary blood alcohol test administered pursuant to the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.012(b) (Vernon 1999). Appellant was also interviewed by law enforcement personnel and the interview was recorded on a video. This "intox video" was lost or destroyed by the district attorney's office prior to trial.

Appellant was subsequently charged with intoxication manslaughter. After a bench trial, he was found guilty and punishment was assessed at seven years' confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant's sentence was suspended and he was placed on community supervision.

After a motion for new trial that was overruled by operation of law, appellant gave timely notice of appeal.

## ISSUES ON APPEAL

Asserting four points of error, appellant contends (1) he was denied effective assistance of counsel; (2) the trial court erred when it denied his motion to suppress the State's evidence regarding his blood alcohol level; and (3) and (4), the evidence was legally and factually insufficient to sustain a conviction for intoxication manslaughter because it failed to establish that *his intoxication* caused complainant's death.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his first point of error, appellant asserts he was denied effective assistance of counsel because his attorney failed to "recognize that the State's conduct on the night in question with regard to the forced taking of [appellant's] blood specimen was pursuant to a law which had been repealed."

Because the statutory authority cited by the State in ordering hospital officials to draw appellant's blood was repealed by the Texas legislature, appellant argues, "all rights and authorities ... afforded to [the ordering peace officer] ... were extinguished." Thus, the government's actions were not authorized and trial counsel was ineffective in failing to raise this issue before the trial court. We disagree.

### 1. Standard of Review

When an appellant asserts his trial counsel was ineffective, he must prove (1)

his trial counsel's representation was deficient; and (2) his trial counsel's deficient performance was so serious that it prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App.2002).

■ Indeed, appellant must prove by a preponderance of the evidence that counsel's representation fell below the objective standard of prevailing professional norms, and there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Id.* To accomplish this, appellant must identify the specific "acts or omissions of counsel that are alleged" to constitute ineffective assistance and affirmatively prove that they fell below the professional norm for reasonableness. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2065–66).

## 2. Pertinent Facts

Following appellant's accident, appellant was taken to the Harris County Jail where, according to the police, he was arrested for operating a motor vehicle while under the influence of an alcoholic beverage and for failure to stop and render aid. *See* TEX. PEN.CODE ANN. §§ 49.04(a) and 49.01(2) (Vernon 2003); TEX. TRANSP. CODE ANN. § 550.023 (Vernon 1999). He was asked to provide a blood specimen and refused.

As a result of appellant's refusal, officers presented a "form TLE–51" to the medical staff of the jail. Sections 2 and 3 of article 6701*l*–5, V.T.C.S., are cited on form TLE–51 as legal authority for collecting involuntary blood specimens. Article 6701*l*–5 was

revised and codified in Chapter 724 of the Texas Transportation Code in 1995.

Although appellant objected to the involuntary taking of his blood, he did not physically resist. Prior to trial, however, appellant's trial counsel filed a motion to suppress the results of the State's blood test. In it, trial counsel argued appellant's blood specimen was taken as a result of an illegal search and seizure because (1) appellant was not arrested for an offense under Chapter 49 of the Texas Penal Code, as required by the statute; (2) appellant's sample was not taken within a reasonable time period after the incident in question; and (3) the person who withdrew appellant's blood was not a qualified technician and withdrew the sample in a place and manner violative of the Texas Transportation Code. Defense counsel did not argue the illegality of the State's actions based on the repeal of article 6701*l*–5.

The trial court denied the motion.

## 3. Discussion

■ Appellant contends the State lacked authority to draw appellant's blood because the Texas legislature "repealed" the statute cited by the State in its TLE–51 form.[2] Appellant further argues that the blood taken by the State was the result of an illegal search and seizure and should have been suppressed. This failure to argue the repeal of article 6701*l*–5, appellant asserts, constituted ineffective assistance of counsel. We disagree.

■ First, appellant points to no place in the record where he has demonstrated that defense counsel's performance was deficient. An assertion of ineffective counsel will be sustained only if the record

---

2. Although appellant asserts article 6701*l*–5 was "repealed," the statute was in fact revised and codified in Chapter 724 of the Texas

Transportation Code. *See* TEX. TRANSP. CODE ANN. §§ 724.012–724.064 (Vernon 1999).

affirmatively supports such a claim. *See Ex parte Ewing*, 570 S.W.2d 941, 943 (Tex. Crim.App.1978). Without a record to explain trial counsel's rationale, there is a "strong presumption that counsel was competent." *Perez v. State*, 56 S.W.3d 727, 730–31 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd); *see also Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). Indeed, to defeat the presumption of reasonable professional assistance, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland*, 928 S.W.2d at 500.

Next, there is nothing in the record to suggest the trial court would have granted appellant's motion to suppress even if trial counsel *had* asserted appellant's proffered argument. Without such evidence, appellant cannot prove the second prong of *Strickland*—namely, that "but for" appellant's counsel's deficient performance a motion to suppress would have been grant-ed. *See Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064; *Bone*, 77 S.W.3d at 833.

Appellant cannot prove Strickland's second prong because, even if trial counsel had asserted the argument that the State lacked authority to draw appellant's blood on the basis of the recodified statute, we cannot say that denial of appellant's motion to suppress would have been improper. First, the new act set forth in the Texas Transportation Code is almost identical to the provisions of the former statute. *Compare* TEX. TRANSP. CODE ANN. §§ 724.013 and 724.012(b) (Vernon 1999) with TEX.REV.CIV. STAT. ANN. art. 6701*l*–5, §§ 2(a) and 3(i).[3] Second, the legislature presumably enacted the change with complete knowledge of existing law. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex.1990); *see also Coastal Indus. Water Auth. v. Trinity Portland Cement Div.*, 563 S.W.2d 916, 918 (Tex.1978) (it is presumed the legislature knew and adopted interpretation placed on original act and intended for new enactment to receive same construction).

3. Section 724.013 of the Texas Transportation Code provides that "[e]xcept as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer," while section 2(a) of article 6701*l*–5 provided that "[e]xcept as provided by Subsection (i) of Section 3 of this Act, if a person under arrest refuses, upon the request of a peace officer, to give a specimen designated by the peace officer as provided in Section 1, none shall be taken." *See* TEX. TRANSP. CODE ANN § 724.013 (Vernon 1999); TEX.REV.CIV. STAT. ANN. art. 6701*l*–5, § 2(a) (Vernon Supp. 1992).

Subsection 724.012(b) of the Texas Transportation Code provides that "[a] peace officer shall require the taking of a specimen of the person's breath or blood if: (1) the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle ...; (2) the person was the operator of a motor vehicle ... involved in an accident that the officer reasonably believes occurred as a result of the offense; (3) at the time of the arrest the officer reasonably believes that a person has died or will die as a direct result of the accident; and (4) the person refuses the officer's request to submit to the taking of a specimen voluntarily," while section 3(i) of article 6701*l*–5 provided that "[a] peace officer shall require a person to give a specimen under Section 2 of this Act if: (1) the officer arrests the person for an offense under Subdivision (2), Subsection (a), Section 19.05, Penal Code, or an offense under Article 6701*l*–1, revised Statutes, as amended; (2) the person was the operator of a motor vehicle involved in an accident that the officer reasonably believes occurred as a result of the offense; (3) at the time of the arrest the officer reasonably believes that a person has died or will die as a direct result of the accident; and (4) the person refuses the officer's request to voluntarily give a specimen." *See* TEX. TRANSP. CODE ANN. § 724.012(b) (Vernon 1999); TEX.REV.CIV. STAT. ANN. art. 6701*l*–5, § 3(i) (Vernon Supp.1992).

■ Finally, unless expressly provided otherwise, a reference to any portion of a statute or rule applies to all reenactments, revisions, or amendments of the statute or rule. Tex. Gov't Code Ann. § 311.027 (Vernon 1998); *In re R.J.J.* 959 S.W.2d 185, 186 (Tex.1998). Indeed, any reference to a statute or part of a statute revised by the Texas Transportation Code is "considered to be a reference to the part of [the] code that revises that statute or part of that statute." *See* Tex. Transp. Code Ann. § 1.003 (Vernon 1999). Thus, the "repeal" of article 6701*l*–5 would not have been a viable basis for a motion to suppress appellant's blood specimen.

Because we find nothing in the record to suggest trial counsel was deficient when he failed to argue the repeal of article 6701*l*–5, and because such a challenge to the legal authority of the State to obtain a blood specimen would have properly been denied by the trial court, appellant has not met his burden to prove he received ineffective assistance of counsel.

■ Indeed, it would have been futile for appellant's counsel to seek suppression of appellant's blood sample based on the repeal of article 6701*l*–5. To provide effective assistance, counsel need not engage in futile acts. *See Mooney v. State,* 817 S.W.2d 693, 698 (Tex.Crim.App.1991) (holding where there is no basis for presenting a motion, counsel is not ineffective for failing to do such because counsel is not required to engage in the filing of futile motions). Accordingly, we overrule appellant's first point of error.

## MOTION TO SUPPRESS

In his second point of error, appellant asserts the trial court erred in denying appellant's motion to suppress the State's blood sample because the results of appellant's blood test were unreliable. We disagree.

### 1. Standard of Review

■ We review a trial court's ruling on a motion to suppress under an abuse of discretion standard of review. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App. 1999); *Dang v. State,* 99 S.W.3d 172, 179 (Tex.App.-Houston [14th Dist.] 2002, no pet. h.). There is an abuse of discretion when the ruling is so clearly wrong as to be outside that zone within which reasonable persons might disagree. *Cantu v. State,* 842 S.W.2d 667, 682 (Tex.Crim.App. 1992).

■ We afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based upon an evaluation of credibility and demeanor. *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App.2000). We afford the same amount of deference to the trial court's ruling on mixed questions of law and fact if the resolution of those questions turns on an evaluation of credibility and demeanor. *Id.*

■ We review *de novo* the trial court's application of law to facts in search and seizure cases. *Id.* The taking of a blood specimen is considered a search and seizure under both the federal and Texas Constitutions. *Schmerber v. California,* 384 U.S. 757, 767–68, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Aliff v. State,* 627 S.W.2d 166, 170 (Tex.Crim.App.1982); *Knisley v. State,* 81 S.W.3d 478, 483 (Tex. App.-Dallas 2002, pet. ref'd).

■ In determining whether the trial court's ruling on a motion to suppress is supported by the record, we generally consider only the evidence adduced at the hearing on the motion unless the suppression issues have been consensually relitigated by the parties during the trial on

the merits. *Rachal v. State,* 917 S.W.2d 799, 809 (Tex.Crim.App.1996); *Dang,* 99 S.W.3d at 179. Because the parties in this case did not consensually relitigate the suppression issues at trial, we will examine only the evidence before the trial court at the suppression hearing.

## 2. Discussion

### (a) Reliability: Procedures

At a criminal proceeding arising out of an offense under Chapter 49 of the Texas Penal Code, evidence of a person's alcohol concentration as shown by the analysis of a specimen of the person's blood taken at the request or order of a peace officer is admissible. TEX. TRANSP. CODE ANN. § 724.064 (Vernon 1999); *Mireles v. Texas Dep't of Public Safety,* 9 S.W.3d 128, 130 (Tex.1999). To be admissible, the blood specimen must be taken in a "sanitary place" by a "physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse." TEX. TRANSP. CODE ANN. § 724.017(a) (Vernon 1999).

Such test results are admissible even without proof that the underlying scientific theory is reliable. *Slagle v. State,* 570 S.W.2d 916, 921 (Tex.Crim.App. 1978) (finding the State need not establish as part of its predicate that a breathalyzer examination is a scientifically reliable test); *Scherl v. State,* 7 S.W.3d 650, 652 (Tex. App.-Texarkana 1999, pet. ref'd)(noting the Texas legislature has determined that intoxilyzer test results are admissible when performed in accordance with the statutory guidelines mandated by the Texas Transportation Code and Texas Department of Public Safety Regulations).

Rather, the necessary predicate that the State must prove for admission of such evidence is the use of properly compounded chemicals; the existence of peri-

odic supervision over the machine used; operation by one who understands the scientific theory of the machine; and proof of the result of the test by a witness or witnesses qualified to translate and interpret such results so as to eliminate hearsay. *Slagle,* 570 S.W.2d at 918 n. 2 (citing *Cody v. State,* 548 S.W.2d 401, 404 (Tex. Crim.App.1977)) (finding proper predicate for allowing breathalyzer examination results where authorities operated test according to Texas Department of Public Safety checklist). *See also Lopez v. State,* 731 S.W.2d 682, 687 (Tex.App.-Houston [1st Dist.] 1987, writ denied), *rev'd on other grounds,* 779 S.W.2d 411 (Tex.Crim. App.1989) (finding proper predicate for allowing blood test into evidence in light of testimony of medical technologist who drew the blood and conducted the test as to her experience, custody of the sample, and manner of conducting test).

Here, the State presented results from two tests conducted on blood drawn from appellant two hours after the accident. The tests indicated a blood alcohol concentration (BAC) of .109 and .110 respectively. Additionally, the State presented evidence that the person extracting appellant's blood was a licensed vocational nurse, that she drew the blood in the clinic of the Harris County Jail, and followed proper protocol in extracting and storing the blood.

The State also presented evidence to show (1) the toxicologist who performed the blood tests on appellant's blood held a degree from Texas A & M University, was certified as a toxicological chemist by the National Registry and the Texas Registry, and performed an average of 150 blood tests per year; (2) the laboratory in which appellant's blood tests were performed was a sterile environment; (3) the toxicologist who performed appellant's blood tests followed proper laboratory procedures the

day in question; (4) the gas chromatograph used to analyze appellant's blood alcohol concentration performed properly and was checked regularly, thus ensuring accurate calibration; and (5) the results gleaned from appellant's two tests were within acceptable variances of each other.

Because the State presented evidence that showed appellant's blood specimen was taken in a sanitary place by a licensed vocational nurse, and because evidence was proffered showing use of properly-compounded chemicals, periodic supervision, proper operation of the State's gas chromatograph by one who understands its scientific theory, and proof of the test results by one who is qualified to translate and interpret such results, we conclude the State's evidence was reliable. *See Slagle*, 570 S.W.2d at 918; *Cody*, 548 S.W.2d at 404. *See also Lopez*, 731 S.W.2d at 687. As such, we conclude admission of this evidence was proper and refusal to suppress the evidence was not an abuse of discretion.

**(b) Reliability: Retrograde Extrapolation**

 Citing *Mata v. State*, however, appellant contends that the results of the blood tests were *not* admissible because they failed to take into account the scientific theory of "retrograde extrapolation." 46 S.W.3d 902, 908–09 (Tex.Crim.App. 2001). Retrograde extrapolation is the "computation back in time of the blood-alcohol level—that is, the estimation of the level [of blood alcohol concentration] at the time of driving based on a test result from some later time." [4] *Id.*

Because the State failed to extrapolate appellant's BAC at *the time of appellant's accident* by taking into account what appellant ate and drank prior to driving, appellant contends, the State's test results were unreliable and should not have been admitted. We disagree.

First, nothing in Texas' statutory framework specifically mandates extrapolation evidence. *Mireles*, 9 S.W.3d at 130. Rather, the Texas Legislature has expressly made admissible evidence of alcohol concentration in any trial in which driving while intoxicated is an issue, if the analysis is performed in accordance with regulations of the Department of Public Safety. *Id.* (holding test results admissible without retrograde extrapolation)

---

4. Retrograde extrapolation is based on the theory that, as alcohol is consumed, it is passed from a person's stomach and intestines into his blood. *Mata v. State*, 46 S.W.3d 902, 909 (Tex.Crim.App.2001). When the alcohol reaches the brain and nervous system, the characteristic signs of intoxication begin to appear. *Id.* The length of time necessary for alcohol to be absorbed into a person's blood stream depends on a variety of factors, including (1) the presence and type of food in the stomach; (2) the person's gender, weight, age, mental state, and drinking pattern; (3) the amount and type of beverage consumed; and (4) the time period of alcohol consumption. *Id.* At some point after drinking has ceased, the person's blood alcohol concentration will reach a peak; after the peak, the concentration will begin to fall as alcohol is eliminated from the person's body. *Id.*

Under the theory of retrograde extrapolation, a single reading of a person's blood alcohol level after an automobile accident does not reflect where in the absorption process a person is at the time of the test. *Id.* If the person is tested while in the absorption phase, his blood alcohol concentration at the time of the test will be higher than when driving. *Id.* If tested while in the elimination phase, the person's blood alcohol concentration at the time of the test could be lower than while driving, depending on whether the person had reached his peak before or after the accident. *Id.*

The greater the length of time between driving and the test, therefore, the greater the potential variation between the person's blood alcohol concentration at the time of an accident and at the time of a test. *Id.* at 909–910.

**850**

Next, the necessity of retrograde extrapolation testimony has been rejected by the preponderance of courts in this state, including this court.[5] *See, e.g., Forte v. State,* 707 S.W.2d 89, 96 (Tex.Crim.App. 1986); *Annis v. State,* 578 S.W.2d 406, 407 (Tex.Crim.App.1979); *Verbois v. State,* 909 S.W.2d 140, 142 (Tex.App.-Houston [14th Dist.] 1995, no writ); *Price v. State,* 59 S.W.3d 297, 300 (Tex.App.-Fort Worth 2001, pet. ref'd); *O'Neal v. State,* 999 S.W.2d 826, 832 (Tex.App.-Tyler 1999, no pet.). *See also Carrillo v. State,* No. 08–01–00471–CR, 2003 WL 1889943, *7 (Tex. App.-El Paso April 17, 2003, no pet. h.)(not designated for publication); *Ball v. State,* No. 03–02–00037–CR, 2002 WL 1988250, at *3 (Tex.App.-Austin Aug.30, 2002, pet. ref'd)(not designated for publication).[6] Indeed, many Texas courts have sustained convictions for driving while intoxicated based, in part, on after-the-fact test results without expert extrapolation evidence. *Gowans v. State,* 995 S.W.2d 787, 790 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd) (compiling cases).[7]

Third, appellant's reliance on *Mata* is misplaced. *See Mata,* 46 S.W.3d at 909–10. In *Mata,* the issue was not whether retrograde extrapolation is necessary in order for the State to prove guilt in a DWI case, or whether BAC test results showing a defendant's BAC at some time after the alleged offense are admissible at trial without retrograde extrapolation. Instead, the issue was whether the science of retrograde extrapolation was reliably applied in Mata's trial. In that case, the Court of Criminal Appeals concluded the trial court abused its discretion by admitting testimony extrapolating a defendant's breath test results back to the time he was driving because the retrograde extrapolation testimony was unreliable. *Id.* at 917.

Finally, unextrapolated test results are probative evidence for the jury to consider in determining intoxication. *Verbois,* 909 S.W.2d at 142 (finding unextrapolated breath test results taken two and one-half hours after accident to be relevant as to whether appellant consumed alcohol prior to accident, not unduly prejudicial, and admissible). *See also McKay v. State,* 155 Tex.Crim. 416, 235 S.W.2d 173, 174 (1950) (evidence of a chemical analysis of an alcohol breath test can be used to "supplement ... evidence obtained from observation of the accused" when there is proof

**5.** The Texas Court of Criminal Appeals has not determined whether retrograde extrapolation is necessary for admission of breath or blood tests in a DWI case. In *Mata,* the Court expressly refrained from addressing the issue. *Mata,* 46 S.W.3d at 910. In *Beard v. State,* an opinion withdrawn on rehearing after appellant's death, the Court stated it "has never accepted" the argument that tests showing a subject's blood alcohol concentration are irrelevant in the absence of retrograde extrapolation testimony. *Beard v. State,* 2002 WL 31116936, at *4 (Tex.Crim.App. Sept. 25, 2002), *opin. withdrawn on reh'g,* 108 S.W.3d 304 (Tex.Crim.App.2003).

**6.** Courts in other jurisdictions have reached the same conclusion. *See, e.g., State v. Barber,* 42 Conn.App. 589, 681 A.2d 348 (1996); *Commonwealth v. Wirth,* 936 S.W.2d 78 (Ky.

1996); *Haas v. State,* 597 So.2d 770 (Fla. 1992) (compiling cases); *State v. Kubik,* 235 Neb. 612, 456 N.W.2d 487 (1990); *Desmond v. Superior Court,* 161 Ariz. 522, 779 P.2d 1261 (1989); *Sullivan v. State,* 517 N.E.2d 1251 (Ind.Ct.App.1988); *People v. Mertz,* 68 N.Y.2d 136, 506 N.Y.S.2d 290, 497 N.E.2d 657 (1986). *But compare Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992); *State v. Ladwig,* 434 N.W.2d 594 (S.D.1989); *State v. Rollins,* 141 Vt. 105, 444 A.2d 884 (1982).

**7.** *See also Martin v. Texas Dep't of Public Safety,* 964 S.W.2d 772, 776 (Tex.App.-Austin 1998, no pet.); *Daricek v. State,* 875 S.W.2d 770, 773 (Tex.App.-Austin 1994, writ ref'd); *Owen v. State,* 905 S.W.2d 434, 438–39 (Tex. App.-Waco 1995, writ ref'd); *Wagner v. State,* 720 S.W.2d 827, 830 (Tex.App.-Texarkana 1986, writ ref'd).

of its accuracy, even though there may be evidence disagreeing with its accuracy; such disagreement goes to the "weight" and not the "admissibility" of the evidence); *Mireles,* 9 S.W.3d at 130 (citing *Forte,* 707 S.W.2d at 95); *Owen v. State,* 905 S.W.2d 434, 438–39 (Tex.App.-Waco 1995, pet. ref'd)(unextrapolated evidence is "probative" evidence for trier of fact to consider and weigh). *But compare Stewart v. State,* 103 S.W.3d 483 (Tex.App.-San Antonio 2003, pet. filed) (finding breath test results without extrapolation to be irrelevant and "no evidence").

If, as here, a defendant rebuts that evidence with evidence of his own that his alcohol concentration level actually *increased* between the time of arrest and administration of the test, the question of lagtime between driving and the test becomes a matter to be weighed by the jury. *Owen,* 905 S.W.2d at 439; *see also O'Neal,* 999 S.W.2d. at 832.

Because the State was not required to provide retrograde extrapolation evidence in order to establish its tests were reliable, and because the State met its burden of showing use of properly-compounded chemicals, periodic supervision, proper operation of machinery, and proof of the State's test results, we conclude admission of appellant's blood tests was proper and that the trial court did not abuse its discretion by refusing to suppress the BAC tests.

Accordingly, we overrule appellant's second point of error.

## SUFFICIENCY OF THE EVIDENCE

In his third and fourth points of error, appellant argues the evidence was legally and factually insufficient to sustain his conviction for intoxication manslaughter. Because the State failed to show appellant's *intoxication* caused complainant's death, he claims, the State failed to prove an element of his alleged offense beyond a reasonable doubt. *See* Tex. Pen. Code Ann. § 49.08 (Vernon Supp.2003). We disagree.

### 1. Standards of Review

To determine legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Garrett v. State,* 851 S.W.2d 853, 857 (Tex.Crim.App.1993). This standard of review applies to cases involving both direct and circumstantial evidence. *King v. State,* 895 S.W.2d 701, 703 (Tex.Crim. App.1995). On appeal, this court is not to reevaluate the weight and credibility of the evidence; rather, we consider only whether the jury reached a rational decision. *See Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.1993). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses. *See Soto v. State,* 864 S.W.2d 687, 691 (Tex.App.-Houston [14th Dist.] 1993, writ ref'd).

To determine factual sufficiency, we view the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000). Because appellant presented exculpatory evidence, he contends the evidence greatly outweighed the State's evidence to the extent that the contrary finding is clearly wrong and manifestly unjust. *Id.* at 11. The proper factual sufficiency standard of review for the latter argument is whether the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.*

■ We must review the evidence weighed by the jury tending to prove the existence of the elemental fact in dispute, and compare it to the evidence tending to disprove the fact. *Id.* at 7. The appellate court may find either that the State's proof of guilt was so obviously weak as to undermine confidence in the jury's determination, or, where contrary evidence is presented, that the finding of guilt was against the great weight and preponderance of the evidence. *Id.* at 11. However, a factual sufficiency review must be appropriately deferential to avoid substituting our judgment for the fact finder's. *Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim. App.1996). We are not free to reweigh the evidence, but must exercise our jurisdiction only to prevent a manifestly unjust result. *Id.*

## 2. Discussion

■ A person commits the offense of intoxication manslaughter if the person (1) operates a motor vehicle in a public place; (2) is intoxicated,[8] and, (3) by reason of that intoxication, (4) causes the death of another by accident or mistake. TEX. PEN. CODE ANN. § 49.08 (Vernon Supp.2003). It is not enough that operation of a vehicle, even by an intoxicated person, causes the death; rather, the "death must be the result of the intoxication and proof must be made ... of that thing which worked a causal connection between the intoxication and the death." *Daniel v. State*, 577 S.W.2d 231, 233 (Tex.Crim.App.1979) (cit-

ing *Long v. State*, 152 Tex.Crim. 356, 214 S.W.2d 303, 304·(1948)). *See also Glauser v. State*, 66 S.W.3d 307, 313 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd).

Here, appellant asserts there is legally and factually insufficient evidence to prove his intoxication—if indeed he was intoxicated—caused the accident. The State's proof, he claims, suggests only that he was intoxicated and that he drove in excess of the posted speed; it does not prove he drove too fast *because* he was intoxicated. We reject this argument.

Under Texas law, a person "is criminally responsible for his conduct if the result would not have occurred but for his conduct." TEX. PEN.CODE ANN. § 6.04(a) (Vernon 1994); *Barcenes v. State*, 940 S.W.2d 739, 745 (Tex.App.-San Antonio 1997, writ ref'd); *Lowe v. State*, 676 S.W.2d 658, 661 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd).

■ A criminal jury can draw reasonable inferences regarding ultimate facts from basic facts. *Lacour v. State*, 8 S.W.3d 670, 671 (Tex.Crim.App.2000). Circumstantial evidence may be used to establish this causal connection. *Barcenes*, 940 S.W.2d at 745. *See also Hines v. State*, 515 S.W.2d 670, 673 (Tex.Crim. App.1974); *Martinez v. State*, 980 S.W.2d 662, 667 (Tex.App.-San Antonio 1998, pet. ref'd).[9]

At trial, appellant produced the following evidence to suggest his alcohol con-

---

8. A person is considered "intoxicated" if he (1) does not have the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of those substances, or any other substance into the body; or (2) has an alcohol concentration in his breath, blood or urine of 0.08 or more. TEX. PEN.CODE ANN. §§ 49.01(2)(A) and (B) (Vernon 2003).

9. The Texas Supreme Court has also addressed this issue, holding a plaintiff may establish a causal connection through circumstantial evidence and reasonable inferences drawn from such evidence. *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450–51 (Tex.1996); *Davis v. Anderson*, 501 S.W.2d 459, 463 (Tex.Civ.App.-Texarkana 1973, no writ).

sumption did not contribute to his behavior the night of the accident:

- an accident reconstructionist testified appellant's speed was only 40–50 mph at the time of impact;
- a defense expert testified complainant ingested marijuana immediately prior to the accident;
- appellant's mother testified she saw appellant ingest only two beers that night;
- a defense witness testified appellant was diabetic and another testified he was bleeding at the time his blood specimen was drawn;
- a retrograde extrapolation expert testified that diabetes and bleeding can impact the "burn-off" of alcohol in a person's blood system and so affect the point at which a person's BAC "peaks" following ingestion of alcohol; and
- the same retrograde extrapolation expert testified that appellant's BAC readings were in fact between .08 and .084 and so, based on what appellant said he ate and drank that night, could only have been .05 at the time of the accident.

The State, on the other hand, proffered the following evidence to suggest appellant's behavior *was* linked to intoxication:

- an accident reconstructionist testified it was consistent for intoxicated drivers to (1) drive "by braille" by hitting the reflectors in a road; (2) drive either very slowly or very fast; (3) refuse to take sobriety tests; (4) have difficulty staying awake; (5) have "tunnel vision"; (6) have slower-than-normal reaction times; and (7) leave the scene of an accident;
- several eyewitnesses testified that appellant (1) hit the reflectors in the road as he approached complainant;

(2) drove in excess of the posted speed; (3) refused to take a field sobriety test; (4) fell asleep at the scene while waiting in a police officer's car; (5) had red, blood-shot eyes; (6) had a slower-than-normal reaction time, as evidenced by the length of appellant's skid marks; and (7) wandered off at the scene;

- a toxicologist testified that appellant's BAC was between .109 and .110 at the time appellant's blood was drawn two hours after the accident;
- appellant's retrograde extrapolation expert testified (1) that *he did not follow* the formula established by the National Highway Traffic and Safety Administration for determining blood alcohol concentration, and (2) he relied on *information given by appellant* to extrapolate appellant's BAC at the time of the accident;
- a State retrograde extrapolation expert testified that (1) appellant's diabetes and bleeding did not substantially influence the "burn-off" of alcohol in appellant's blood, and (2) appellant's ingestion of only two beers the night of the accident would, if true, have produced a BAC of between .03 and .05 instead of the value obtained; and
- an accident reconstructionist testified that "but for the defendant being intoxicated," complainant would not have been hit, because all appellant "had to do was move over eight inches to the right."

Based on the evidence proffered by the State, we are persuaded that a factfinder could reasonably have found complainant operated his motor vehicle at a time when he did not have the "normal use" of his mental or physical faculties or when he had an alcohol concentration of 0.08 or more. *See* TEX. PEN.CODE ANN. §§ 49.01(2),

49.04(a) (Vernon 2003). *See also* Tex. Pen. Code Ann. § 49.08 (Vernon 2003). Additionally, we are persuaded a factfinder could reasonably have found that, "but for" appellant's intoxication, complainant's death would not have occurred.

We therefore conclude the evidence was legally sufficient to support a finding of causation. *See Lowe,* 676 S.W.2d at 661 (finding sufficient evidence defendant "caused" victim's death where victim died of pneumonia, the pneumonia was a result of stab wound complications, and defendant inflicted the stab wounds—despite evidence suggesting such wounds are "not normally fatal"); *Barcenes,* 940 S.W.2d at 745 (finding sufficient evidence defendant "caused" infant's death where (1) infant died from "massive blunt trauma to the head," (2) defendant had sole custody and care of the infant at the time of injury, (3) defendant's version of events was medically discredited, and (4) defendant attempted to cover up his guilt by getting someone to lie for him).

Moreover, the evidence was factually sufficient because the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Johnson,* 23 S.W.3d at 7.

Because the evidence was both legally and factually sufficient to support a finding that appellant's intoxication *caused* complainant's death—and to permit a rational jury to find all the essential elements of intoxication manslaughter—we overrule appellant's third and fourth points of error.

\* \* \* \* \* \*

Having overruled all of appellant's points of error, we affirm the judgment of the trial court.