**Affirmed and Memorandum Opinion filed October 9, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00679-CR

---

**CHRISTOPHER LEE STANLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 12**
**Harris County, Texas**
**Trial Court Cause No. 1625671**

---

### M E M O R A N D U M   O P I N I O N

Appellant Christopher Lee Stanley was charged with the misdemeanor offense of driving while intoxicated ("DWI"). A jury found him guilty, and the trial court assessed punishment at 180 days' confinement, suspended for one year of community supervision, and a $700 fine. In two issues, appellant contends that the trial court erred by (1) denying his motion to suppress the results of a horizontal gaze nystagmus ("HGN") test and (2) allowing evidence of blood test results over his objection. We affirm.

## BACKGROUND

On September 4, 2009, appellant drove through a red light and hit another vehicle in the middle of an intersection near Webster in Harris County, Texas. The driver of the other vehicle was transported by ambulance to a nearby hospital. Webster Police Department Officer Tovar responded to the accident. On first approaching appellant, Tovar noticed a strong odor of alcohol on his breath, red watery eyes, and a sway to his stance. Appellant admitted that he was coming from a local bar. Officer Tovar further noted that appellant's speech was slurred to the extent that he had to ask appellant a question twice to understand what he was saying. When Tovar asked appellant if he had been drinking, appellant responded that he had had "a few" and specified he had had four to five drinks. There were two open beer cans in appellant's vehicle.

While Webster Police Department Officer Muniz secured the scene, Officer Tovar conducted field sobriety tests on appellant in a nearby parking lot. These tests included the HGN, walk-and-turn, one-leg stand, and alphabet tests. Based on his observations, Tovar arrested appellant and transported him to the Webster Police Station. At the intoxication room at the station, Officer Muniz also smelled alcohol on appellant's breath and noticed he had red, watery, bloodshot eyes. Appellant refused to provide a breath sample and was transported to the Houston Police Department central intoxication facility to provide a blood sample. His blood alcohol concentration was measured at 0.158.

At trial, appellant sought to suppress the video and results of the HGN test. The court held a hearing outside the presence of the jury before denying appellant's motion to suppress the HGN test. A video of appellant's being administered the HGN and other tests was presented to the jury as well as Officer Tovar's testimony regarding the field-sobriety test results.

Before admitting the results of the blood test, the court held an additional hearing on the admissibility of the expert testimony of Amanda Culbertson, the forensic scientist who performed the analysis on appellant's blood. Culbertson testified that because the

2

blood had clotted, she placed the blood in a beaker and homogenized the blood prior to analyzing the sample. She testified that her method of homogenization was scientifically accepted and that she followed the standard operating procedure in the HPD manual for blood alcohol quantification, which had been validated for plus or minus ten percent accuracy. She further testified that while the manual did not mention placing the blood in a beaker, it was a step she always performed. Appellant called an expert witness to challenge the reliability of the blood test. Following the hearing, the trial court found Culbertson's procedure scientifically adequate and admitted the blood test and Culbertson's expert testimony concerning the results of the test into evidence. Culbertson testified regarding the blood test results and explained that, at the time of the accident, appellant's blood-alcohol concentration would have been between 0.188 and 0.208.

After hearing the evidence, the jury found appellant guilty of DWI. The trial court assessed punishment at 180 days' confinement, suspended for one year of community supervision, and assessed a fine of $700. This appeal timely followed.

## ANALYSIS

### A.     Standard of Review

We review the trial court's ruling on a motion to suppress under an abuse-of-discretion standard. *Long v. State*, 823 S.W.2d 259, 277 (Tex. Crim. App. 1991). A trial court's ruling on a motion to suppress, if supported by the record, will not be overturned. *Brooks v. State*, 76 S.W.3d 426, 430 (Tex. App.—Houston [14th Dist.] 2002, no pet.). At a suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. *Id.* We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor, but review *de novo* the trial court's application of the law to the facts if resolution of those ultimate questions does not turn on the evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Where, as here, the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supporting its ruling as long as those findings of fact are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Because the trial court was free to believe any or all evidence presented and to make a determination of historical facts supported by the record after evaluating the credibility and demeanor of the witnesses at the hearing, we give the trial court's decision deference. *See Guzman*, 955 S.W.2d at 89; *see also Griffith v. State*, 983 S.W.2d 282, 287–88 (Tex. Crim. App. 1998) (applying abuse-of-discretion standard to *Kelly* issue).

**B.      Failure to Suppress the HGN Testimony**

In his first issue, appellant contends that the trial court erred by denying his motion to suppress Officer Tovar's testimony concerning appellant's performance on the HGN test. Specifically, appellant claims the HGN test was incorrectly administered and that the results were rendered unreliable by (1) Officer Tovar's moving the stimulus at a four second pace instead of a two second pace during one phase of the test, (2) the presence of flashing police vehicle lights nearby, and (3) Officer Tovar's failing to ask qualification questions prior to the administration of the test.

An HGN test is considered to be scientific evidence admissible subject to the requirements of Texas Rule of Evidence 702, which provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702; *Emerson v. State*, 880 S.W.2d 759, 763 (Tex. Crim. App. 1994). To be admissible, scientific evidence must be both relevant and reliable. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. 1992). *Kelly* established a three prong test for reliability of evidence based on a scientific theory: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been applied properly on the occasion in question. *Id.* at 573.

4

The Texas Court of Criminal Appeals has taken judicial notice of the reliability of both the scientific theory behind the HGN test as well as the procedure for performing the HGN test contained in the National Highway Traffic Safety Administration ("NHTSA") manual for field-sobriety testing. *Emerson*, 880 S.W.2d at 768–69. Appellant challenges the remaining prong of the *Kelly* test: whether Officer Tovar correctly applied the technique on the occasion in question.

First, appellant contends that Officer Tovar moved the stimulus at a four second pace during the maximum deviation phase of the HGN test, rather than the two second pace specified in the NHTSA manual. But such minor deviations from the manual do not render an HGN test inadmissible. *See Plouff v. State*, 192 S.W.3d 213, 219 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding that officer's holding stimulus for only one second instead of four as specified in the manual goes to the weight rather than the admissibility of the HGN test results); *Compton v. State*, 120 S.W.3d 375, 378–79 (Tex. App.—Texarkana 2003, pet. ref'd) (explaining that speed at which stimulus is moved during maximum deviation phase of HGN test has no effect on reliability and cannot form basis for excluding results at trial).

Next, appellant contends that Officer Tovar failed to ask qualification questions screening for potential causes of nystagmus such as brain damage or other medical disorders prior to conducting the test. However, asking qualification questions is not necessary to screen HGN test subjects for medical conditions. *See Webster v. State*, 26 S.W.3d 717, 722–23 (Tex. App.—Waco 2000, pet. ref'd) (holding that the officer sufficiently screened a subject for medical conditions potentially causing nystagmus by checking for (1) whether the eyes track the stimulus together; (2) whether the pupils are the same size; and (3) whether a significant disparity exists between the performance of the left and right eyes); *see also Liles v. State*, No. 01-08-00927-CR, 2009 WL 3152174, at *6 (Tex. App.—Houston [1st Dist.] Oct. 1, 2009) (mem. op.) (not designated for publication) (concluding, as in *Webster*, that the NHTSA manual does not require a separate pre-test screening and that the screening can be performed adequately by

5

checking for equal pupil size and equal tracking during the test). Officer Tovar began the HGN test by checking for equal tracking, equal pupil size, and resting nystagmus. Tovar testified that the purpose of testing for equal tracking, equal pupil size, and resting nystagmus was "to see if they're a candidate to perform the test" by ruling out the possibility of a medical condition that would interfere with the test. Hence, Officer Tovar sufficiency screened appellant for medical conditions that potentially could interfere with the HGN test.

Finally, appellant contends that the presence of flashing lights compromised the validity of the test. Although Officer Tovar removed appellant from the scene to a nearby parking lot and turned off the lights on his police vehicle, appellant contends that the flashing lights from vehicles at the accident scene were close enough and sufficiently in appellant's field of vision to interfere with the test results. After watching the video of the HGN test and hearing a great deal of testimony concerning the placement of appellant vis-à-vis the lights during the course of the suppression hearing, the trial judge stated she did not agree with the defense that the lights were problematic. We defer to the trial judge's factual finding, which is supported by our review of the record.

For the foregoing reasons, appellant has not established that the trial court abused its discretion in admitting the evidence concerning the HGN test. We overrule his first issue.

## C.    Failure to Suppress the Blood Test

In his second issue, appellant challenges the admissibility of the blood test as scientific evidence on two grounds: (1) that the homogenization technique had not been validated in the HPD lab and (2) that Culbertson did not properly apply the technique on the occasion in question. Appellant contends specifically that Culbertson's transferring the blood sample to a beaker before homogenizing it was not validated and rendered the blood sample unreliable. Appellant also questioned whether preservative chemicals were present in the vial.

6

As is relevant here, evidence of a person's alcohol intake as shown by an analysis of a blood sample is admissible when the sample is taken in accordance with statutory requirements. Tex. Transp. Code Ann. §§ 724.064, 724.017(a) (West 2011). "[T]he necessary predicate that the State must prove for admission of such evidence is the use of properly compounded chemicals; the existence of periodic supervision over the machine used; operation by one who understands the scientific theory of the machine; and proof of the result of the test by a witness or witnesses qualified to translate and interpret such results so as to eliminate hearsay." *Garcia v. State*, 112 S.W.3d 839, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.). The State has the burden of proof to show by clear and convincing evidence that the scientific evidence is reliable. *Hernandez v. State*, 116 S.W.3d 26, 30 (Tex. Crim. App. 2003).

Culbertson's testimony established that she is a forensic scientist and technical supervisor with a master's degree in analytical chemistry and many years of experience performing chemical analysis in accredited labs. Culbertson testified that the HPD lab's procedure for blood alcohol analysis had been validated to plus or minus ten percent accuracy for the procedure as a whole. She testified that she followed that procedure. Accordingly, the procedure used here is sufficiently reliable to admit blood test results. *See Morris v. State*, 214 S.W.3d 159, 172–74 (Tex. App.—Beaumont 2007), *aff'd,* 301 S.W.3d 281 (Tex. Crim. App. 2009) (holding that possible inadequate separation of ethanol from the other materials in a test sample did not render a blood test result inadmissible where the lab's results were validated to plus or minus ten percent variation); *see also Kaufman v. State*, 632 S.W.2d 685, 687–88 (Tex. App.—Eastland 1982, pet. ref'd) (holding the use of a cleansing solution containing alcohol in connection with a blood test does not render the result inadmissible, but is merely a factor to be weighed by the jury).

Moreover, Culbertson testified that her method of homogenization was a scientifically accepted procedure. The defense's expert witness, Gary Wimbish, testified that the technique of homogenization she used was approved by an accepted learned

treatise. Therefore, the record reflects that the technique of homogenization used was scientifically reliable. Additionally, appellant has cited no authority for the propositions that pouring the blood into a beaker or unexplained clotting of blood would render the analysis results inadmissible.[1] If, as here, the procedure used has been validated as reliable, a trial court does not abuse its discretion in admitting the evidence. See *Garcia*, 112 S.W.3d at 849.

Under these circumstances, the trial court did not abuse its discretion in admitting evidence of the blood test. We overrule appellant's second issue.

## CONCLUSION

We have overruled both of appellant's issues. Accordingly, the judgment of the trial court is affirmed.


/s/        Adele Hedges
           Chief Justice


Panel consists of Chief Justice Hedges and Justices Brown and Busby.

Do Not Publish — Tex. R. App. P. 47.2(b).

---

[1] The registered nurse who drew appellant's blood testified that he used the right vial with the appropriate additive already in it, that the vial was not past its expiration date, and that he correctly agitated the sample.

8